GEORGE HEBNER, JR., *v.* BLANCHE A. POWELL.

[No. 34, October Term, 1939.]

*Decided November 29th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, and DELAPLAINE, JJ.

*Robert E. Coughlan, Jr.*, for the appellant.

*Daniel S. Sullivan, Jr.*, with whom were *John J. Timanus* and *Daniel S. Sullivan* on the brief, for the appellee.

MITCHELL, J., delivered the opinion of the Court.

This appeal is from a judgment on a verdict entered, in the Superior Court of Baltimore City, for the plaintiff, in an action for personal injuries and property damage sustained by the plaintiff and growing out of a collision between an automobile owned by the plaintiff, in which she was riding at the time of the accident, with an automobile owned and operated by the defendant. The facts with reference to the manner in which the accident occurred, as detailed by witnesses for the plaintiff, are undisputed; the defendant having offered no testimony on his own behalf.

Briefly, these facts are that on the evening of November 6th, 1937, at 8 o'clock, the plaintiff was riding in her automobile, which was being operated by her husband, and proceeding in a southerly direction on Falls Road, at a point about one hundred and fifty feet south of Old Pimlico Road, in Baltimore County, Maryland. At the time of the accident the plaintiff's car was being driven at a speed of from twenty-five to thirty miles an hour on its right side of the road. The headlights of the defendant's automobile were first observed by the driver of the plaintiff's car at a point about four or five hundred feet distant, at which time the former automobile was proceeding on its right side of the highway. The uncontradicted facts connected with the manner in which the accident happened are detailed by the plaintiff's husband and chauffeur as follows: "The Falls Road at the place where the accident occurred is 22 feet wide, including the shoulders, but I did not measure it. When

I saw the headlights of this car, it was on its proper side and when it was twenty feet or more in front of me, it cut across and the right side of his car hit the center of my car and it continued past me and swung off the road, facing south, the same way I was going, about three feet off the shoulder. The other car struck my car right in the center of the radiator. * * * The defendant's car was going at between sixty-five and seventy miles an hour when it hit my machine."

According to the above witness, the car he was driving, after the accident, was still fourteen inches to his right of the center line of the road, and the defendant's car came to a stop slightly to the rear and to the right side of the plaintiff's car and, as stated, facing south, or the opposite direction in which it was proceeding before the accident, and entirely off the highway.

The plaintiff sustained injuries consisting of lacerations of the scalp which extended across the forehead and nose; she received bruises and cuts about her limbs, a sprained back, a fractured rib, and was completely incapacitated for four weeks. She testified that she suffered pain in her whole body and could not perform any of her household duties for more than eight months after the accident, and at the time of the trial was still suffering from the effects of her injuries to the extent that she was unable to fully perform her household duties. Dr. Niblett, her regular physician, testified that the scars on her face and body were permanent.

The only exceptions stressed by the appellant in his brief, and in the oral argument before this court, were two in number; the first being with reference to the rulings of the trial court upon evidence, and the second as to the rejection by the court of the defendant's second prayer. These exceptions will be considered in the order of their sequence.

The declaration contains two counts, the first relating to the personal injuries sustained by the plaintiff, and the second to the destruction of the plaintiff's automobile. At the trial evidence tending to show the practical

destruction of the plaintiff's automobile was supported by several witnesses, who testified that after the accident the plaintiff's car was removed a short distance to an adjoining property in order to clear the line of traffic, and that it was in the same condition after it was moved as it was before the removal. The witness Donald McCulloh testified that he helped to remove the car, and that its condition was unchanged when Jack W. Powell, a son of the plaintiff, reached the scene of the accident after it had been moved.

Jack W. Powell, after detailing the damage done to the car, testified that two days after the accident it was towed away and that the towing truck, in the operation of moving the car, accidentally backed into the left front fender and headlight, causing additional damage to that extent. Other than this latter damage, he testified that the car was in the same condition as when he first saw it after the accident; that in the latter condition it was towed to his father's property on the Falls Road; that his father traded it in; that he was living at his father's home in September, 1938, when the car was disposed of, and that it had not been used or driven after the accident.

Mr. Powell was followed by Robert E. Jenkins, who testified that he had been engaged in the automobile business for twenty-two years, and that he first saw the car after the accident in the back of Mr. Powell's yard on Falls Road, in September, 1938. He was then asked the question: "What was the condition of the Powell car when you examined it?" Objection was made to the question upon the ground that the car had been stationed in the Powell yard for ten months, and the witness, not having seen the car after the accident, was not, therefore, in position to say that the condition in which he found it ten months later was the same as the condition in which the car was immediately after the accident. It was conceded that the wrecked car had remained in the open back yard of the Powell home from the time it was towed there until the witness saw it, and the theory of

the objection was that damages caused by weather conditions or otherwise might have effected a changed condition in the car between the indicated intervals. The court overruled the objection, and its action is the basis of the exception now being considered.

The witness was permitted to testify as to the condition in which he found the car as of September 5th, 1938, and detailed the damages to it which he then found. His testimony was cumulative, as witnesses preceding him had testified as to the damages at the time of the accident; the witness Powell had also testified to the additional damage sustained when it was towed, and it was conceded by the plaintiff that the car had remained in the weather continuously after the accident.

At best the testimony, unsupported by other testimony, would have been of little weight, but what the witness did testify to was based upon facts resulting from his own examination of the car as of the date of his belated inspection. In connection with the preceding testimony, such testimony was relevant to the subject of inquiry, and we think was properly submitted to the jury, it being their exclusive prerogative to pass upon its weight. 2 *Poe, Pl. & Pr.*, sec. 266.

Turning now to the question raised by the remaining exception, it is urged by the appellant that error was committed by the trial court in rejecting his second prayer, which asked an instruction as follows: "The court instructs the jury that there is no evidence in this case that the plaintiff has suffered any injury that would permanently impair her ability to follow her usual avocations."

The first count in the declaration alleges that the plaintiff, in consequence of the accident, "was seriously, painfully and permanently injured in and about her head, body and limbs, internally and externally, her system was generally shocked and she was caused to suffer and will continue to suffer great pain and anguish and to be unable to follow her usual avocations."

At the trial, which took place over sixteen months after the injuries were sustained, Dr. Niblett, the attending physician, testified that the scars received by the plaintiff were permanent, and that as far as he knew the plaintiff was all right at the time of the trial. His conclusion was qualified, however, by the previous statement that his patient was extremely nervous, that her back was improved but she could not get around very well, and complained of her back all the time.

In the course of his direct examination he was asked the following question: "What is your prognosis of that sprained back—what is your prognosis now?" He answered: "Well, in my mind, I would say that, I would think—I haven't had an X-ray of her back— but I would think that her back is all right at the present time." The testimony of the doctor then follows: "Q. Well, when you saw her last she told you she suffered pain from it, didn't she? A. Yes, I believe she did. Q. Well, is there anything to indicate that what she told you was not true? A. You might have a headache and I might look at you and you say that you have a headache and I cannot say that you don't have the headache."

The husband of the plaintiff testified that before the accident his wife was very healthy and active, and since the accident had been very irritable and inactive; that before she did the housework; that at the time of the trial his daughter did the work, with some assistance from the plaintiff beginning six or eight months previous to the trial.

The plaintiff, after detailing her prior suffering, testified in manner following: "I still have a scar on my forehead and down along the left side of my nose. Before the accident, I did the housework and after the accident I didn't do anything for about eight or nine months and then I did very little. I still have trouble with my back and outside of that I feel pretty well. The pain in my back is really constant. Sometimes it is worse than others. I do quite a bit of my housework now, but I still do not do any sweeping."

There is no testimony in the record in conflict with the above statement as to the effect which the injuries received have had, or will have, upon the pursuit of the usual avocation of the plaintiff, other than the qualified statement of the attending physician as above indicated, and it is therefore apparent that the prayer entirely ignores the facts in the case.

The prayer as drawn is also defective in form, in that it seeks an instruction that there is no evidence, rather than that there is no legally sufficient evidence. But such an instruction should not be granted unless the court assumes the truth of all the evidence offered by the plaintiff and all inferences legally deducible from it, though contradicted in every particular by the evidence of the defendant, and then finds that the plaintiff's evidence is insufficient to establish his case.

Notwithstanding the above principle of law, the defendant submits that under the ruling of this court in the case of *Mt. Royal Cab Co., Inc., et al. v. Dolan,* 166 Md. 581, 171 A. 854, 856, the prayer should have been granted.

We have examined the facts in that case, and in our opinion those facts are not analogous to the facts found in the instant case. For example, in that case this court, in dealing with a prayer almost similar to the one now under consideration had this to say: "A careful examination of all the testimony not only fails to disclose any evidence of permanent injury resulting from the accident, but affirmatively establishes that the injuries received are temporary. Counsel for the plaintiff stated to the court during the trial that the plaintiff was not claiming any permanent injury * * *." In that case, as is evident from the above excerpt from the opinion, there was no evidence of permanent injury, while here there is testimony tending to show effect of the injury existent sixteen months after the accident, and uncontradicted evidence tending to show a permanent impairment in the ability of the plaintiff to follow her usual avocations.

It is our conclusion, therefore, that the prayer was properly rejected, and accordingly the judgment will be affirmed.

> *Judgment affirmed, with costs to the appellee.*