REID, ADMINISTRATRIX *v.* HUMPHREYS ET AL.

(Three Appeals in One Record)

[No. 161, October Term, 1955.]

*Decided May 9, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*John W. T. Webb,* with whom were *Webb, Bounds & Travers* on the brief, for the appellant.

*Paul M. Higinbothom* and *W. Lee Harrison,* with whom were *Douglas G. Bottom, Charles E. Hearne, Jr.,* and *Stanley G. Robins* on the brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

This litigation grew out of a collision of a Chevrolet automobile with a milk delivery truck in the City of Salisbury early on the morning of January 22, 1954. The Chevrolet was owned and operated by Hannibal Hamblin Reid. The truck was owned by City Dairy, Inc., and was operated by William D. Humphreys, its employee.

The accident occurred on Salisbury Boulevard, between Newton Street and Maryland Avenue. The boulevard curves here to the right for northbound traffic. Salisbury Boulevard, a through highway, is also known as the Salisbury By-pass, and is a part of U. S. Route 13. At this point the boulevard is 56 feet wide from curb to curb. It has two northbound and two southbound traffic lanes. Each lane is 10 feet wide. Between the northbound and southbound lanes there is a 4-foot macadam strip, and along the curb on each side of the boulevard there is a 6-foot parking lane.

Newton Street is only about 200 feet north of Maryland

Avenue. On the west side of the boulevard north of Maryland Avenue there is an Atlantic Service Station. Just south of the filling station is an Atlantic billboard a few feet north of the north curb of Maryland Avenue.

The accident occurred at about 3 a. m. It was raining hard at that time and the temperature was at about the freezing point. Humphreys, a route salesman, then 23 years old, was driving a "walk-in" milk delivery truck. Driving eastwardly on Newton Street, he entered Salisbury Boulevard and turned to the right, and proceeded southwardly in "the slow lane," as the outside lane is called. Within a few seconds after he got on the boulevard, Reid's automobile crashed into his truck and knocked it around some distance so that when it came to a stop about six feet south of Newton Street, it was facing east, the front wheels on the line between the slow and fast lanes, and the rear wheels at the west curb. The Chevrolet, in which Reid and Mrs. Betty Lee Huling were riding, was hurled across the west curb and the service station lawn, and crashed backwards through the billboard.

Paul L. Lokey, of Somerset County, was the first person to arrive at the scene. Humphreys was leaning against the truck "bent over and complaining of pains in his stomach." Lokey hurried to the City Dairy plant, called for an ambulance, returned to the scene, and drove Humphreys to the Peninsula General Hospital.

Officer Walter Evans, of the Salisbury police force, arrived about five minutes after the accident. Officer Claude Smith arrived several minutes later. At the billboard they found the Chevrolet containing the two victims. They also found that the distance from the Chevrolet to the truck measured 222 feet.

Reid and Mrs. Huling were taken in the ambulance to the hospital, where they were pronounced dead. Autopsies were performed, and a report from Dr. Henry C. Freimuth, of Baltimore, Chief Toxicologist of the State of Maryland, showed that there was an alcoholic content in the spinal fluid obtained from Reid's body in the amount of .17 per cent ethyl alcohol. Dr. Kendrick McCullough, a member of the staff of

the Peninsula General Hospital, testified: "This amount of alcohol indicates that he was under the influence. It would indicate impairment of judgment and slowing of reflexes and motions." The doctor added that the accepted maximum which would permit a driver to operate an automobile safely is .15 per cent.

On April 1, 1954, suit for damages was instituted under Lord Campbell's Act by the State of Maryland, for the use of Roy C. Huling, surviving husband of Betty Lee Huling, against Humphreys, City Dairy, Inc., and Mrs. Esna D. Reid, administratrix of Reid's estate.

On April 14, 1954, Humphreys and City Dairy, Inc., filed cross-claims against Mrs. Reid, administratrix.

On December 1, 1954, the suit for Huling was marked settled and satisfied, and thereupon Mrs. Reid, administratrix, to her own use and to the use of State Farm Mutual Automobile Insurance Company, Reid's insurer, filed a counter-claim against Humphreys and City Dairy, Inc., as joint tort-feasors, claiming all or half of the sums paid in settlement of the claims of Huling and Mrs. Huling's estate under the Maryland Joint Tortfeasors Act, Code 1951, art. 50, sec. 20 *et seq.*

The cross-claims of Humphreys and City Dairy, Inc., against Mrs. Reid, administratrix, and her counter-claim were tried together before a jury in the Circuit Court for Wicomico County.

Humphreys, the only surviving eyewitness of the accident, testified that when he reached the Salisbury Boulevard, he stopped at the stop sign, looked both to the north and to the south, and not seeing any cars coming, entered the boulevard, turned to the right, and continued southwardly in the lane nearest the west curb. He then testified that, soon after entering the boulevard, he saw for the first time the headlights of a northbound car coming toward him between 750 and 900 feet away. He stated that he was driving his truck at a speed of only about 10 or 15 miles an hour, and that after he had traveled about 100 or 125 feet south of Newton Street, and thus was about halfway down the short block between Newton

Street and Maryland Avenue, the oncoming car skidded across the road when only about 50 or 75 feet south of him, and crashed with great speed into the front of his truck.

The police officers did not find any skid marks at the scene of the accident. Officer Evans, when asked on the stand whether he found any skid marks on the road, replied: "No skidmarks on the highway that I could see at all. As I say, it was raining very hard. There wouldn't be as many. But probably whatever there was was washed away very quick."

The officers found very little debris on the road. All that they found was some pieces of headlight glass, a piece of chrome, and a piece of casting. These were lying near the truck.

In the cross-claims of Humphreys and City Dairy, Inc., against Mrs. Reid, administratrix, the Court instructed the jury that there was no evidence of contributory negligence on the part of Humphreys. The jury thereupon awarded Humphreys a verdict against Mrs. Reid, administratrix, for $35,000, and awarded City Dairy, Inc., a verdict against her for $1,021.96.

In Mrs. Reid's counter-claim against Humphreys and City Diary, Inc., the Court granted a directed verdict in favor of defendants.

Mrs. Reid filed a motion for a new trial, but after Humphreys filed a remittitur for $15,000, thus reducing the verdict in his favor to $20,000, the Court overruled the motion. Mrs. Reid has appealed here from the judgments entered upon the verdicts of the jury in favor of Humphreys and City Dairy, Inc., and also from the judgment entered on the directed verdict in her counter-claim.

## I.

We first consider appellant's objection to Lokey's testimony that on January 22, 1954, at about 3 a. m., a two-tone Chevrolet passed him at a speed of about 70 miles an hour on U. S. Route 13 about a mile and a half south of the place where the accident occurred. Appellant contended (1) that Lokey's

observation was too remote, and (2) that he did not sufficiently identify Reid's automobile.

Generally, the admissibility of testimony as to the speed or reckless operation of a motor vehicle at some distance from the place where it afterwards collided with another vehicle is discretionary with the trial court, and a ruling admitting such evidence will not be disturbed on appeal in the absence of a clear abuse of discretion.

This general rule was accepted in *Slate v. Saul,* 185 Va. 700, 40 S. E. 2d 171, 174. The trial court in that case admitted testimony as to the speed of a bus more than a mile from the place of the accident. On appeal it was argued both that the testimony was too remote and that the witness had failed to identify the bus. The Supreme Court of Appeals of Virginia held, however, that the trial court had properly admitted the testimony "for what it was worth", leaving its weight and credibility to the jury.

Likewise, in *United States v. Uarte,* 9 Cir., 175 F. 2d 110, 112, where there was testimony in the United States District Court for the Southern District of California that a Navy car was traveling at a speed of 70 or 80 miles per hour several miles from the place of collision, the United States Court of Appeals for the Ninth Circuit held that it was a permissible inference that it had been driven continuously at a high and dangerous rate of speed for several miles before the accident. In making that ruling, Judge Bone, speaking for the Court, said:

> "We think that the facts in this case portray a situation where admissibility of evidence as to the speed of the Navy car at the times and places mentioned in the testimony was a question to be determined in the sound discretion of the trial court. * * * The question of remoteness as related to the probative value of such evidence was to be considered and weighed by the trier of the facts, and under the facts of this case we conclude that its reception was not prejudicial error."

In the case at bar there was no prejudicial error in admit-

ting Lokey's testimony concerning the northbound Chevrolet, even though he stated that it passed him about a mile and a half south of the place of the accident.

Nor was there any error in admitting Lokey's testimony on the ground that he did not sufficiently identify Reid's automobile. It is true that Lokey admitted that he did not inspect the automobile at the billboard. However, he stated that the only automobile that passed him between Fruitland and Salisbury was a late model Chevrolet. The evidence produced at the trial showed that Reid's car was a 1953 model; hence it was a comparatively new car at the time of the accident in January, 1954. Lokey also stated that the automobile was a two-tone car, green above and cream below. The evidence at the trial showed that Reid's car was dark green above and yellow or light cream below. While there may have been serious question of the admissibility of Lokey's testimony if the accident had occurred in the daytime during heavy traffic, it was not very likely that two automobiles exactly alike would pass a motorist at high speed within a period of a few minutes in a heavy rain on a cold morning several hours before daylight.

## II.

We next consider appellant's complaint that the Court permitted Humphreys' attorney to read portions of Humphreys' pre-trial deposition to the jury.

Our deposition rule is clear that any deposition, so far as admissible under the rules of evidence, may be used at the trial of the case by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness; and if only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce all of it which is relevant to the part introduced, and any party may introduce any other parts in accordance with this rule. General Rules of Practice and Procedure, part 2, subd. 1, rule 11.

The record in this case shows that when Humphreys was under cross-examination, Mrs. Reid's attorney read to him three questions, which had been asked him at the deposition taken on June 8, 1954, and his answers to those questions.

The questions and answers were read at the trial in the Court below for the purpose of impeaching Humphreys as a witness. As the questions and answers were read to the jury and became a part of the record, there was no error in permitting Humphreys' attorney to read other parts of the deposition for the purpose of showing that the answers at the deposition and the answers at the trial were not irreconcilable.

### III.

Appellant also objected when the Court refused to permit Officer Smith to give his opinion on what the debris indicated as to the point of impact. The question asked him was: "In your experience as a trooper, what would that indicate?"

Appellant's attorney proffered to show that Officer Smith had taken a course of training at the Pikesville School of the Maryland State Police; that he had served on the police force for ten years; and that he had investigated about 2,000 motor vehicle accidents and had testified in many accident cases. However, while this proffer set forth the officer's training and experience to qualify him for the investigation of traffic accidents, it did not disclose what opinion the officer would give and the bearing such an opinion would have on the issue in the case.

Officer Smith testified that the only debris dropped on the road as a result of the collision consisted of some pieces of glass from the headlight and a piece of chrome directly in front of the truck and a piece of casting near the left front door of the truck. The testimony was uncontradicted that the Chevrolet struck the left front corner of the truck. In addition, the police officers observed a piece of the bumper of the truck imbedded in the left front door of the Chevrolet. There was practically no damage to the right side of the Chevrolet. The testimony was uncontradicted that the truck was southbound and the Chevrolet was northbound. There was no testimony that the vehicles were traveling in the same direction.

In view of this testimony, we are unable to say that the action of the trial Court in not permitting Officer Smith to give his opinion concerning the debris was prejudicial error. It

is, of course, accepted that the judgment of a trial court will not be reversed by the Court of Appeals for excluding expert testimony unless it is convinced that there was prejudicial error.

### IV.

Appellant contended that in Mrs. Reid's counter-claim against Humphreys and City Dairy, Inc., the Court erred in directing a verdict in favor of defendants.

Appellant attempted to discredit the testimony of Humphreys and Lokey, contending that the physical facts raised a reasonable inference that Reid was not traveling northwardly, but southwardly. One physical fact relied upon was that the Chevrolet came to a stop more than 200 feet south of the truck. She argued that if the Chevrolet had been northbound, it would have been physically impossible for it to have been knocked backwards that far. Another physical fact relied upon was that debris was found near the truck. She argued that this fact indicated that the collision occurred only a few feet from the intersection of Newton Street, and therefore it could be reasonably inferred that Humphreys had failed to comply with the provision of the Maryland Motor Vehicle Law that the driver of a motor vehicle shall come to a full stop at the entrance to a through highway and shall yield the right of way to other vehicles approaching on the through highway. Code 1951, art. 66½, sec. 198.

We repeat that Humphreys, the driver of the truck, who was the only living eyewitness of the collision, testified positively that the Chevrolet was traveling northwardly. Lokey's testimony tended to corroborate him. The physical facts also plainly corroborated this version of the collision. On the other hand, there was no testimony whatever that the Chevrolet was traveling southwardly.

In addition to the fact that there was no testimony whatever that the Chevrolet was southbound, there was nothing more than unsupported theory that the truck driver disobeyed the boulevard law. Since there was no legally sufficient evidence that Humphreys was guilty of negligence, we cannot accept the contention that the Court erred in directing a verdict in favor of defendants.

## V.

We now come to appellant's final contention that in the cross-claims brought by Humphreys and City Dairy, Inc., the Court erred in instructing the jury that there was no legally sufficient evidence that Humphreys was guilty of contributory negligence.

For the reasons already stated, we hold that this instruction likewise was proper, since there was no legally sufficient evidence that Humphreys was a contributing cause of the accident. In an action in tort, the plaintiff is entitled to an instruction that as a matter of law he was not guilty of contributory negligence where there is no evidence from which a reasonable mind could find or infer that he had directly contributed to his own injury by acting as an ordinarily prudent man would not act under the circumstances. *Garozynski v. Daniel,* 190 Md. 1, 57 A. 2d 339; *Goldman v. Johnson Motor Lines,* 192 Md. 24, 63 A. 2d 622; *Lindenberg v. Needles,* 203 Md. 8, 15, 97 A. 2d 901, 40 A. L. R. 2d 225; *Sanders v. Williams,* 209 Md. 149, 120 A. 2d 397.

As we have not found any reversible error in the rulings of the trial Court, we will affirm the three judgments appealed from.

*Judgments affirmed, with costs.*