VOGELSANG ET AL. *v.* SEHLHORST ET AL.
(Two Appeals in One Record)

[No. 73, October Term, 1949.]

414

*Decided February 9, 1950.*

416

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Samuel S. Smalkin* and *Hyman Ginsberg*, with whom were *Martin W. Seabolt* and *Ginsberg & Ginsberg* on the brief, for the appellants.

*Z. Townsend Parks, Jr.*, with whom was *Howard C. Bregel* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

The owner and driver of a taxicab appeal from judgments against them after a jury trial in favor of the driver of an automobile and his passenger for personal injuries sustained in a collision between the two vehicles.

Both vehicles were proceeding west on Edmondson Avenue between intersections about 6 o'clock in the afternoon of October 14, 1948. For speed limit purposes, Edmondson Avenue at the point of collision is "classed as a dual lane highway in the unthickly settled section of the City." The portion of the highway where the accident occurred is designated as a one-way street with a parkway and streetcar tracks separating it from the portion used by eastbound traffic. It is 24 feet wide, enough to accommodate three cars abreast, except when vehicles are parked on the north side. The lanes are not marked. The automobile was proceeding next to the parkway at a speed of about 20 miles per hour. The driver of the taxicab, overtaking the automobile at a speed of about 30 miles per hour, sounded his horn twice,

but the automobile did not move over. The driver of the taxicab then attempted to pass it on the right, but in doing so the left rear fender of the cab came in contact with the right front fender of the automobile, causing it to jump the curb and strike a pole on the parkway.

Both of the appellees testified that the automobile did not alter its course or increase its speed prior to contact. Mr. Sehlhorst testified that he did not pull to his right when he heard the horn "because that particular road there * * * you don't have to move over". There was a one-way sign on the parkway near the place where the taxicab tried to pass. Cars were parked at the north curb "along there," and it was "rather close"; "if I had gotten in the center lane I might have hit a car parked on the right side. * * * If he could have passed me why didn't he keep straight ahead in the center lane he was in?" He testified that the cab driver cut to the left before he had completely passed and hooked the right fender of the automobile with the left rear fender of the cab.

The cab driver admitted that he cut to his left, to avoid a car parked about 40 feet east of the intersection of Edmondson Avenue and Stanford Road. He testified that after passing the automobile and "before reaching this parked car I looked in the rearview mirror and seen the reflection of his lights, so I had plenty of room to go around the parked car." He did not testify that he gave any signal before cutting to the left. He testified that "the skirt" of his left rear fender was "pulled out", and he "pushed it down" after the collision. Three witnesses testified that the skirt was pulled out to the rear.

Section 162, Article 66½ of the Code provides: "(Drive on Right Side of Roadway—Exceptions.) Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows: * * * (3) Upon a roadway divided into three marked lanes for traffic under the rules applicable thereon; or (4) upon a roadway designated and sign posted for one-way traffic."

Section 164 provides: "(Overtaking a Vehicle.) The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to the limitations, exceptions, and special rules hereinafter stated: (a) The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle. (b) Except when overtaking and passing on the right is permitted, the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle."

Section 165 provides: "(When Overtaking on the Right is Permitted.) * * * (b) Within business or residence districts, the driver of a vehicle may overtake and, allowing sufficient clearance, pass another vehicle proceeding in the same direction either upon the left or upon the right on a roadway with unobstructed pavement of sufficient width for four or more lines of moving traffic when such movement can be made in safety. * * *."

Section 168 provides that where three marked lanes are provided, the center lane shall be used for passing, but that signs may allocate particular lanes for special purposes.

Section 162 clearly provides that vehicles are not required to keep to the right on a one-way street, and, by implication, that passing on the right is permitted on such a street. While section 165 does not refer specifically to a one-way street, it permits passing on the right in a business or residence district, whether lanes are marked or not, if the roadway is wide enough for four or more lines of moving traffic. It is significant that the application of the latter clause is not limited to streets where traffic moves only in one direction, but seems to expressly extend the rule implicit in section 162 to some streets of sufficient width where traffic moves in both directions. It could hardly be contended that the option of passing

to left or right is limited to streets where traffic moves in both directions.

The case of *Mitchell v. Dowdy,* 184 Md. 634, 42 A. 2d 717, cited by both sides, is not directly in point. In that case the overtaking vehicle attempted to pass on the right after signal, on a dual highway in the open country, and the accident was due to the overtaken vehicle belatedly pulling to the right. This was held to present a jury question. It should be noted, however, that official signs read "Keep to the Right", and "Left Lane for Passing."

In the case at bar we think it is perfectly clear that the taxicab driver did not violate the law in attempting to pass on the right, and, conversely, that the automobile driver was not obliged to move to his right on signal. However, both drivers were under an obligation to use due care. We find no error in the submission to the jury of the questions of negligence and contributory negligence. The jury could properly have found that the cab driver's swerve to the left was the proximate cause of the injury, and that the automobile driver was not at fault.

The appellants did not object to the Court's charge on these issues. The court told the jury they should "take into consideration the rules of law governing traffic using the highway at the time of the accident" and read to them sections 164 and 165, above quoted. Counsel for the appellants then stated, out of the presence of the jury, "I thought your Honor indicated he was going to explain the interpretation of this section of the statute about passing on the right and what was meant by four-lane street." The court said, "I think that is a matter of argument to the jury". Counsel then remarked: "In talking to Mr. Parks you indicated four-lane meant two lanes in each direction". The court said: "I think that is the purpose but I think you will have to argue that to the jury." Counsel remarked: "I call it to your Honor's attention".

The interpretation of the statute was, of course, a question for the court and not the jury. However, in

the circumstances we do not find that the refusal to amplify the charge was prejudicial. The fact that the court read Section 165 to the jury was an indication that it was applicable, and, if applicable, permitted passing on the right if it could be done with safety. There is nothing in the record to indicate that the jury was misled. The appellees did not contend that the taxicab driver violated the statute in passing to the right; the issue was whether he used due care under the circumstances. These circumstances pointed so strongly to negligence on his part that we think the court might properly have directed a verdict against him, if a request had been made, for the testimony is undisputed that the cab cut in front of the automobile and hooked fenders. The appellants argue that it may be inferred from the cab driver's testimony about seeing the lights that the automobile was behind him when he swerved, although this is completely contradicted by the physical facts, including the injury to the skirt of the cab's left rear fender. Even accepting that inference as a fact, there is nothing to show that the automobile could have stopped before the contact, or that its driver was negligent. Thus it might have been ruled as a matter of law that the cab driver's failure to allow sufficient clearance was the sole cause of the accident.

The only other objection to the charge was in permitting the jury to consider whether the injuries of Mrs. Sehlhorst were "temporary or lasting" in their nature. Dr. Rogers testified, some eight months after the accident, that the scars would be permanent, although not "as bad as they are now", and that he could not tell whether there would be a permanent limitation of motion in her knee. "If she gets motion back in there and doesn't develop arthritis she ought not to have any permanent disability but it is going to be a long time, although you can't tell at this stage." We think there was a sufficient basis for the instruction. *Cf. Hebner v. Howell*, 177 Md. 237, 242, 9 A. 2d 232. We also find no error in the admission of photographs of the plaintiffs, taken in the hospital a few days after the accident.

*Garozynski v. Daniel,* 190 Md. 1, 5, 57 A. 2d 339, 341. While the photographer was not called, there was testimony by the attending physicians that the photographs represented the condition in which they saw the patients on the dates indicated.

*Judgments affirmed, with costs.*