564 A.2d 82

**James BEGHTOL**

v.

**Henry Leroy MICHAEL, et al.**

**No. 95, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Sept. 29, 1989.

Certiorari Denied Feb. 9, 1990.

388

A. Douglas Owens (Rodger O. Robertson and Owens & Robertson, P.A., on the brief), Baltimore, for appellant.

John C. Monahan (J. Bradford McCullough and Frank, Bernstein, Conaway & Goldman, on the brief), Bethesda, for appellees.

Argued before MOYLAN, ROSALYN B. BELL and WENNER, JJ.

ROSALYN B. BELL, Judge.

This is an appeal from a jury trial in the Circuit Court for Howard County. The case arises from a three-car collision that occurred on April 27, 1984. The collision claimed the lives of two people who were passengers in Henry Michael's truck, Michael's grandson, Eugene W. Riley, III, who died later that day, and Michael's wife Isabelle, who died 33 days later.

Michael sued James Beghtol and Thomas Lane for the wrongful death [1] of his wife and as personal representative of his wife's estate; on his own behalf due to personal injuries he sustained in the crash; and on both his own behalf and as personal representative of his wife's estate, for loss of consortium. Michael's daughter, and her husband, Eugene W. Riley, II, sued for the wrongful death of their son and as personal representatives of his estate.

---

1. Pursuant to Rule Q 41, Mrs. Michael's children, William Michael, Karen Przybyla and Vickie Riley, were named as plaintiffs to the use of Henry Leroy Michael.

The case was originally set for trial on November 16, 1987. That day, the motions judge granted Beghtol's motion *in limine* to exclude the testimony of both Marianna Mardeusz and Gary Kramer who saw Beghtol's and Lane's cars travelling down the road prior to the accident. Beghtol then moved for summary judgment, which the motions judge granted. Michael moved for reconsideration of the grant of the summary judgment and the motion *in limine.* The motions judge changed his mind on the summary judgment, but let the motion *in limine* stand and set the case for trial.

On the day of trial, the trial judge reversed the prior judge's decision on the motion *in limine* on the basis that it was overbroad. While the trial judge ruled that the testimony of Mardeusz and Kramer was admissible, the judge specifically advised appellant's counsel that he was free to object to any part of the testimony at trial.

The case was tried before a jury which found that Beghtol was negligent[2] and that his negligence proximately caused the damages. The jury did not assess punitive damages against either defendant. Based on these findings, the jury awarded total compensatory damages of $819,762.30 covering all claims. Beghtol's motions for judgment notwithstanding the verdict and for a new trial were denied. Beghtol appeals.

Appellant raises several issues on appeal:

—Did the trial court's failure to exclude testimony of acts remote from the accident scene result in reversible error?

—Did the trial court's action of calling Defendant Lane as the "court's witness" unfairly prejudice Beghtol's defense?

—Did the trial court's failure to instruct the jury properly on the issue of racing result in reversible error?

---

**2.** The trial court directed a verdict of liability against Lane who does not appeal that decision or the jury award rendered against him.

—Did the trial court's failure to instruct the jury that it should not be governed by sympathy result in reversible error?

We answer all of appellant's questions in the negative and affirm the judgment entered on the verdict of the jury. We explain.

On April 27, 1984, shortly before 1:00 p.m., Beghtol was driving a Ford Bronco on Route 216 in Howard County, heading east. Lane, his friend, was driving a Corvette in the same direction. Lane pulled his car onto the shoulder of the then single-lane highway to pass the Bronco. The parties disagree about the description of the interaction between the Beghtol and Lane vehicles. In their respective statement of facts, Michael describes the scene as "horseplay," while Beghtol does not characterize it at all. After several seconds, Lane tried to speed up so he could get back on the road in front of Beghtol. The cars collided; Beghtol's car crossed the center line and crashed into Michael's oncoming Chevrolet pick-up truck. Michael sustained injuries from the accident, and his wife and grandchild, who were passengers in the truck, died as a result of the crash.

## TESTIMONY OF ACTS REMOTE FROM THE ACCIDENT

Appellant's first assignment of error concerns the court's admission of the testimony of Mardeusz. She testified that she saw appellant's car "speed" past her at a location approximately a mile and a half from the spot where the accident occurred. She later came upon the scene of the collision.

■ Initially, we address appellees' argument that any errors in admitting Mardeusz's testimony were not preserved for our review. Appellees contend that appellant waived his objection because he failed to object at several points during the trial when appellees' counsel asked questions of Mardeusz concerning the velocity of appellant's car. We agree.

Appellant's attorney objected "for reasons previously stated in chambers and on the record" before Mardeusz began to testify. This objection was broad, however, covering her ability to testify at all. Since this objection was vague, it cannot serve as a basis for appellant's present argument that his objection to Mardeusz's testimony concerning speed is preserved. Appellant was well aware that the trial judge ruled "at least part of the testimony ... is relevant and admissible ... that leaves you free, of course, to object to the testimony at trial and rulings will be made at [the] time the testimony's presented."

—Continuing Objections—

Appellant urges us that this general objection at the start of Mardeusz' testimony served as a continuing objection. Continuing objections have only recently become a recognized part of Maryland trial practice with the addition of Rule 2–517(b). *See* P. Niemeyer & L. Richards, *Maryland Rules Commentary* at 297 (1984). Rule 2–517(b) provides:

"At the request of a party or on its own initiative, the court may grant a continuing objection to a line of questions by an opposing party. For purposes of review by the trial court or on appeal, the continuing objection is effective only as to questions clearly within its scope."

In the case at bar, appellant's counsel did not ask for a continuing objection, nor did the court grant one *sua sponte*. The Court of Appeals has enunciated the rule that "[i]f the trial judge admits the questionable evidence, the party who made the motion [*in limine*] ordinarily must object at the time the evidence is actually offered to preserve his objection for appellate review." *Prout v. State*, 311 Md. 348, 356, 535 A.2d 445 (1988). Clearly, a motion *in limine* is not the equivalent of a continuing objection, nor is appellant's broad objection to Mardeusz' testimony tantamount to a continuing objection. There is no equivalent to a continuing objection. Though specific objections to every question will preserve the issue for review, they cannot be equated with continuing objections which were instituted

precisely to avoid the interruptions of specific objections. We hold that there was no continuing objection to preserve appellant's objection to Mardeusz' testimony as to the speed of the cars.

## Specific Objections

In the absence of a continuing objection, specific objections to each question are necessary to preserve an issue on appeal. *See Baltimore & Ohio R.R. v. Plews*, 262 Md. 442, 470–71, 278 A.2d 287 (1971). Appellant did not object to the first question or answer in connection with speed, although he did specifically object to some questions asked by appellees in Mardeusz' testimony. These questions were leading questions and questions relating to the speed of the vehicles. As a result, appellant contends he is entitled to review of the relevance of those questions.

Appellant would like to have it both ways: his specific objections preserved those issues, and where he failed to object his motion *in limine* preserved the issues. This is patently incorrect. Appellant could easily have preserved the issues had he either made a continuing objection which covered speed and remoteness when the issue was first raised or had he objected to every question, which, as he admits, he failed to do. The result of these omissions is the waiver of the objections and a failure to preserve the issue for our review. Rules 2–517 and 8–131; L. McLain, *Maryland Evidence*, §§ 103.1, 103.3, 103.12 (1987).

### —Federal Case Analogy—

Appellant cites *Werner v. Upjohn Co.*, 628 F.2d 848, 853 (4th Cir.1980), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 862, 66 L.Ed.2d 804 (1981) which involves Federal Rule of Evidence 103(a)(1) to support his argument that his objections have preserved the issue. Federal Rule of Evidence 103(a)(1) provides:

> "In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context...."

*Werner* stands for the proposition that a party need not state the specific grounds for an objection if the reason for the objection is clear from the context of the trial. *Werner* does not mean that a party can fail to object to a question and later claim that his or her pretrial motion implies a standing objection to a particular line of questioning. A party must still object at the appropriate times.

■ *Werner* does not persuade us that the Maryland Rules allow a party to fail to object and later contend a motion *in limine* served as a continuing objection. Rule 2–517(a) provides in pertinent part:

> "An objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise, the objection is waived."

The rule is clear and is not identical to Federal Rule 103(a)(1). Rule 2–517 provides for a waiver of the objection if not made, while the Federal Rule provides that the objection is not waived if the specific grounds are apparent from the context. Appellant did not act in accordance with the Maryland Rule. Thus, we hold that the issue is not preserved for our review.

■ Even if the issue were preserved for our review, the result would be unchanged. The ruling of the trial judge regarding the admissibility of Mardeusz' testimony was within his discretion. *See Reid v. Humphreys,* 210 Md. 178, 185, 122 A.2d 756 (1956). We will not overturn his decision in the absence of a clear abuse of discretion. *Reid,* 210 Md. at 185, 122 A.2d 756. Here we see no abuse of that discretion.

## DEFENDANT LANE AS "COURT'S WITNESS"

Appellant's second argument focuses on the alleged prejudice that resulted from the court calling co-defendant Lane as its witness. His argument is without merit.

As appellees were about to call Lane to the witness stand, appellant realized that Lane's testimony would differ from

what he said at his deposition. The judge suggested taking Lane's deposition in court, out of the presence of the jury, so appellant could learn what Lane's testimony would be at trial. During this "deposition" Lane recanted his earlier testimony in which he had shouldered full responsibility for the accident. In a very emotional statement, Lane told the court that as a result of appellees' opening statement suggesting that appellee Henry Michael had blamed himself for the accident, Lane felt he simply had to tell the truth about the accident. Appellant declined the opportunity to cross-examine Lane out of the presence of the jury.

Upon learning of Lane's new version, appellees asked the court to call Lane as a court's witness. Appellant moved for a mistrial. The court called Lane as its witness and denied the motion for mistrial. The court admonished appellees' counsel not to ask Lane the reasons why he had altered his testimony. He was, however, permitted to show the disparate testimony between Lane's prior deposition and his current position at trial, which he did not do. On cross-examination appellant addressed the issue of Lane's change of testimony. After cross-examination, in a bench conference, appellees' counsel asked the judge if he could now raise the issue of why Lane changed his testimony since appellant had already impeached Lane with the prior inconsistent statement. The trial judge permitted counsel to "just bring up the reason why he changed his testimony."

■ First, appellant theorizes that the court conditioned its agreement to call Lane as the court's witness on the understanding that appellees would not be permitted to inquire why Lane changed his testimony. Appellant believes the court stated he could inquire and impeach Lane based upon his prior deposition testimony, and appellees would not thereafter be able to ascertain from Lane why he changed his testimony. This is simply incorrect. The court did not, as appellant contends, change the rules. Rather, the judge followed the law as it applies to the impeachment of witnesses: "A witness who has been impeached by proof

of a prior inconsistent statement may be rehabilitated by denying or explaining the statement...." McLain, § 613.1. *See also Virginia Freight Lines, Inc. v. Montgomery,* 256 Md. 221, 226, 260 A.2d 59 (1969); *Campbell v. State,* 203 Md. 338, 344–45, 100 A.2d 798 (1953). This is precisely what appellees' counsel did after appellant opened up this area by showing the jury that Lane's prior deposition contradicted his testimony at trial. We hold that the trial judge was correct in permitting appellees' counsel to examine Lane as to the reasons why he changed his testimony; the jury determines the value of Lane's altered testimony.

█ Second, appellant contends that the court erred when it called Lane as a court's witness. Generally, where neither the prosecution nor the defense is willing to vouch for the veracity of the witness [3] and the witness appears to possess material evidence, calling the witness as the court's witness is within the sound discretion of the trial court. *Patterson v. State,* 275 Md 563, 569, 342 A.2d 660 (1975). While *Patterson* is a criminal case, its reasoning applies equally to civil cases such as the case before us.

In *Scarborough v. State,* 50 Md.App. 276, 282, 437 A.2d 672 (1981), *cert. denied,* 292 Md. 639 (1982), we outlined the use of five factors to determine when it is appropriate to call a court's witness:

> "(1) the prosecutor's inability to vouch for the veracity or integrity of the witness; (2) the close relationship between the witness and the defendant; (3) the existence of contradictory or inconsistent statements by the witness; (4) the hostility of the witness; and (5) the necessity for the testimony, i.e., where the witness possesses material evidence."

---

**3.** The Voucher Rule which was in effect at the time of trial was recently eliminated by Rule 1–501 (effective January 1, 1989), which provides that the credibility of a witness may be attacked by any party. Thus, the need for court's witnesses no longer exists. Appellant's trial, however, was conducted in February 1988 before the Voucher Rule was excised from the Rules.

We analyze the court's decision with respect to these factors.

■ In the case *sub judice*, appellees could not vouch for Lane's veracity because of his recently conflicting versions of the events in question. Lane and appellant had been close friends since childhood. The witness's hostility could not be determined by appellees since the court instructed counsel not to interview Lane in the days between the disclosure of the change of heart and his court testimony. Finally, even appellant admits Lane possessed material evidence as to the events at the scene of the accident. Lane met four of the five criteria; hence, we hold that the trial court did not abuse its discretion in calling him as its witness.

Appellant's argument that prejudice is inherent in the label "court's witness" contradicts the standard allowing the court to rely on its discretion to call its own witness. If the court, as appellant suggests, prejudicially enhances the credibility of a witness simply by calling him or her as a court's witness, then the court would never be able to do so. This is not the applicable law. Instead, courts are given discretion to call witnesses when neither party will call the witness, which was the case here.

Additionally, if appellant were truly concerned about the enhancement of the credibility of Lane's testimony, he could have asked for a jury instruction to dispel any heightening effect of the label. Moreover, in the instant case, had appellees been unsuccessful in their bid to have Lane called as a court's witness, it is possible that they would have decided not to call Lane to avoid the risk of being unable to impeach their own witness should he reverse again. Appellant could have made the same tactical decision. Had Lane not been called by either party, the jury would have been greatly disadvantaged. The Court of Appeals has spoken directly on point:

> "When the court does make a person the court's witness, particularly where done in order to circumvent the rule against impeachment of one's own witness, the trial

judge's power is said to be used to improve the efficiency of the adversary system."

*Patterson*, 275 Md. at 580–81, 342 A.2d 660 (citation omitted). Thus, the trial court's action of calling Lane as the "court's witness" was within its discretion and did not unduly prejudice appellant.

## MOTION FOR MISTRIAL

■ Appellant contends the change in Lane's testimony necessitated the court's declaration of a mistrial. In his pretrial deposition, Lane accepted complete responsibility for the accident and said there was no "horse play." At trial, his testimony diametrically opposed his earlier testimony. This Court has stated

"[t]he decision to grant or to deny a mistrial rests in the sound discretion of the trial judge, and in the absence of proof of abuse of that discretion his decision will not be disturbed on appeal."

*Kelch v. Mass Transit Admin.*, 42 Md.App. 291, 297, 400 A.2d 440 (1979), *aff'd*, 287 Md. 223, 411 A.2d 449 (1980). Further, we have adopted the standard in criminal cases, which is equally applicable here, that in exercising that discretion a trial judge should declare a mistrial only under "extraordinary circumstances and where there is manifest necessity to do so." *Hickman v. State*, 76 Md.App. 111, 120, 543 A.2d 870 (1988). The trial judge has a variety of other less restrictive measures he or she can impose, such as allowing for additional discovery to ensure a fair trial. *Kelch*, 42 Md.App. at 297, 400 A.2d 440.

In the instant case, the trial judge delayed Lane's testimony for several days. The trial court also agreed to permit appellant's counsel to cross-examine Lane out of the hearing of the jury prior to the cross-examination in front of the jury; appellant's counsel declined this opportunity. The trial court granted other ameliorative procedures to lessen any possible disadvantage of the changed testimony to appellant such as allowing for additional time for rebuttal witnesses. The trial judge did not grant appellant's motion

for a mistrial, a drastic remedy granted only in extraordinary circumstances. *Hickman*, 76 Md.App. at 120, 543 A.2d 870.

We conclude that Lane's altered testimony did not give rise to an extraordinary circumstance which required the granting of a mistrial. It was the province of the jury to decide the credibility of Lane's altered testimony. We hold that the trial judge was within his discretion to deny appellant's motion for a mistrial.

## FAILURE TO INSTRUCT JURY PROPERLY CONCERNING RACING

 Appellant next assigns error to the trial court's failure to instruct the jury properly on the issue of racing. He makes two claims: first, the court should have instructed the jury that, absent a finding that appellant raced in the traditional sense of a challenge and an agreement to race, not simply jockeying for position, appellant could not be held liable; second, that moving his car in his lane to prevent Lane's car from emerging from the shoulder of the road does not legally constitute racing. Appellees, by contrast, argue that where there is joint action, regardless of whether the action fits the traditional idea of a race, both parties are responsible for the consequences of their action. In short, appellees aver that the instructions reflected the appropriate law which is that racing is one theory for finding liability, but the traditional "negligence under the circumstances" standard applies as well.[4] We agree with appellees.

---

**4.** With regard to the issue of racing, the court read the following statement, in pertinent part:

"Ladies and gentlemen, the racing of motor vehicles on a public highway is negligence. All those who engage in a race are liable for an injury sustained by a third person as a consequence of the race, regardless of which of the racing vehicles actually inflicted the injury. The jury may not find that the defendants were engaged in a race unless the evidence and reasonable inferences deducible therefrom are sufficient to conclude that there was an actual challenge and response to race between both defendants at the time of

■■■ Racing has been addressed by the Maryland courts. Appellant cites *United Railways & Electric Co. of Baltimore v. Perkins,* 152 Md. 105, 136 A. 50 (1927), to support his argument that he did not cause the accident because he is under no duty to stop and anticipate that another driver will disregard his own position. *United Railways* involved a street car, in the analogous position as appellant's vehicle, and an automobile, in the analogous position as Lane's car, which was alongside of it. The street car failed to stop for a pedestrian who was in the path of the car, and the car hit the pedestrian. Appellant misconstrues *United Railways* as holding that the street car motorman's actions were separate from those of the car driver. In fact, the judge there did allow the case to go to the jury on the issue of the motorman's negligence:

> "It is the opinion of this Court, however, that the jury were at liberty to find causation of the accident by the

---

the accident. Evidence of excessive speed or speed greater than the speed limit at certain points along the highway when engaged in passing another vehicle is not legally sufficient evidence of racing. * * *

\* \* \* \* \* \*

"Ladies and gentlemen, in the facts of this case, if you should find from the evidence that Thomas John Lane drove his vehicle on the shoulder of the roadway in an attempt to overtake and pass the vehicle drive[n] by [appellant] for an appreciable distance and [appellant], conscious of Lane's presence on the shoulder, deliberately moved and positioned his vehicle in such a manner as to prevent Lane from returning his vehicle to the traveled portion of the highway by slowing and speeding his vehicle in response to the movement of Lane's vehicle, and that this action on the part of [appellant] was a proximate cause of the accident, then you may return a verdict in favor of the plaintiffs against [appellant]. If, however, you find from the evidence that [appellant] was preventing Lane from returning to the traveled portion of the highway, but the sole proximate cause of the accident was ... Lane's action in driving on the shoulder, losing control of his vehicle and colliding with the vehicle driven by [appellant], then you should return a verdict against Lane but in favor of [appellant]. Further, you—should you find from the evidence that [appellant] did not engage in a race with ... Lane, or engage in any intentional blocking of ... Lane on the shoulder, then you should return a verdict in favor of [appellant] since the evidence of speeding alone is insufficient to support a verdict in favor of the plaintiffs against [appellant]."

motorman in the testimony that he and the automobile driver were racing, *or keeping up with each other."* *United Railways,* 152 Md. at 112, 136 A. 50 (emphasis added). Similarly, we hold that in the instant case the jury could have found appellant to have proximately caused the accident by his involvement in the joint action of keeping the cars "neck and neck" with each other regardless of whether they were racing.

Appellant also cites *Vogelsang v. Sehlhorst,* 194 Md. 413, 71 A.2d 295 (1950) to buttress his claim. In fact, *Vogelsang* is contrary to his position. In *Vogelsang* a taxicab pulled to the right to pass a car, and then cut to its left to avoid hitting a parked car. The left rear fender of the cab hit the right front of the car it was trying to pass. Appellant's quotations from the case are inapposite. He quotes a passage where the Court of Appeals observed that the trial court might have directed a verdict against the cab driver. But later in the opinion, the Court held that "both drivers were under an obligation to use due care" and found "no error in the submission to the jury of the questions of negligence and contributory negligence." *Vogelsang* 194 Md. at 419, 71 A.2d 295. The Court of Appeals implicitly approved the expanded instruction of ordinary negligence principles as opposed to an instruction limiting liability to a finding of actual racing. Similarly, we hold there was no error in the instant case in the trial court's sending the issue of appellant's negligence to the jury.

## FAILURE TO INSTRUCT JURY
## REGARDING SYMPATHY

 Finally, appellant states that the trial court erred by not reading the last sentence of one of his jury instructions. Appellant's requested jury instruction number five was as follows:

"You must consider and decide this case fairly and impartially. All persons stand equal before the law and are entitled to the same treatment under the law. You should not be prejudiced for or against a person because

of that person's race, color, religion, political or social views, wealth or poverty. You should not even consider such matters. *The same is true as to prejudice, for or against, and sympathy for any party."* [5] (Emphasis added.)

Appellant took this jury instruction verbatim from Maryland Civil Pattern Jury Instructions (2d ed. 1984, MPJI 1:6). According to appellant, the last sentence was critical because it admonishes jurors to avoid rendering a verdict based on feelings of prejudice and sympathy, and the trial court's omission was reversible error. Appellees, on the other hand, argue that the instructions given concerning impartiality covered in MPJI 1:6 and the importance of basing the verdict "entirely upon the evidence you have heard and seen in the courtroom and the law as given in these instructions and not upon any other considerations," sufficed.

The standard of review for jury instructions as set out by the Court of Appeals is that, as long as the law is fairly covered by the jury instructions, reviewing courts should not disturb them. *Jacobson, t/a Checker Cab Assoc. v. Julian,* 246 Md. 549, 561, 229 A.2d 108 (1967), *accord Myers v. Estate of Alessi,* 80 Md.App. 124, 132, 560 A.2d 59 (1989) (noting that this policy is firmly established under Maryland Rule 2–520(c)).

The common understanding of the word "impartial" is disinterested, unbiased, equitable, fair, just and treating all alike. Black's Law Dictionary 677 (5th ed. 1979). Sympathy, on the other hand, is defined as "an affinity, association, or relationship between persons or things wherein whatever affects one similarly affects the other." Webster's Ninth New Collegiate Dictionary 1198 (1987). Thus "impartial" means, in part, the opposite of "sympathetic." The portion of MPJI 1:6 the trial judge did read emphasized

---

5. When brought to the court's attention that this part of the instruction was not given, the court responded, "I didn't give that instruction. I gave the other one." It is not clear to us what "the other one" was.

the importance of being impartial. Moreover, his instruction to base the verdict strictly on the evidence presented laid the foundation for pushing sympathies aside. In light of this, we hold that the trial court conveyed to the jury the importance of deciding the case on the basis of the evidence provided and not on the basis of any personal feelings or sympathies they may have had for the parties or the particular situation.

Appellant also asserts that in a case such as this, where there is a tragic loss of life, the court must instruct jurors that impartiality requires the elimination of sympathy and prejudice. Failure to do so, they continue, constitutes reversible error.

The standard for reversible error places the burden on the complaining party to show both prejudice and error. *Harris v. David S. Harris, P.A.*, 310 Md. 310, 319, 529 A.2d 356 (1987). Prejudice to a party is error that has influenced the outcome of the case. *State Roads Comm'n v. Kuenne*, 240 Md. 232, 235, 213 A.2d 567 (1965).

In the instant case, the jury was given a special verdict sheet and clearly found appellant negligent and that his negligence proximately cause the collision. This result would not have changed if the court had instructed the jury to quell any sympathies they may have had. The jury could well have found appellant negligent on the evidence presented and the reasonable inferences therefrom.

The better practice is to tell jurors explicitly to disregard any feelings of prejudice or sympathy; but the court's failure to read this sentence clearly did not prejudice the verdict, as is evidenced by the jury's refusal to award punitive damages. We conclude there was no error.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.