# WILLIAM SCARBOROUGH v. STATE OF MARYLAND

[No. 388, September Term, 1981.]

*Decided December 4, 1981.*

The cause was argued before THOMPSON, LOWE and MASON, JJ.

*Howard L. Cardin, Assigned Public Defender,* for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Keith Matthews, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

In this case we are primarily concerned with a novel procedure, adopted by the trial judge in a robbery prosecution, in which separate juries were empaneled to try the appellant and a co-defendant simultaneously.

William Scarborough, appellant, was charged along with Maurice King with robbery with a deadly weapon and a handgun violation. The two defendants were tried together as set out above in the Criminal Court of Baltimore. King was acquitted of both charges by one jury while the appellant was found guilty by the other. The appellant was thereupon sentenced to a term of 20 years for the robbery conviction and 5 years for the handgun violation, to be served consecutively.

The appeal presents the following questions:
1. Did the trial court err when it compelled the appellant to be tried along with the co-defendant before two juries?
2. Did the trial court err in instructing the jury that they were the judges of the law?
3. Did the trial court err when it called Laura Batts as a court's witness?
4. Did the trial court err in permitting improper rebuttal testimony?

## FACTS

On the morning of January 11, 1980, Robert Shore, manager of Herb's Liquor and Cut Rate, accompanied by Henry Floyd, the "clean up man", went to Carrollton Bank to acquire cash for the business's check cashing service. After obtaining approximately $10,000 in cash and coins they returned to the store and parked across the street. As they were crossing the street, each was robbed by a different individual. Shore shot several times at the person who robbed him and the robber returned two shots. He testified that he did not see the Floyd robbery. Floyd also testified that he did not see the Shore robbery but that after the shots

were fired he did see two persons running in the vacant lot across the street. Robert Shore testified that the robber took from him a package containing approximately $9,900. Subsequently Shore identified the appellant by photo, by line-up and by in-court identification. Henry Floyd testified that the second robber took from him a package containing approximately $100.

Laura Batts, the appellant's mother, was called at the request of the state as a court's witness. In the course of her testimony she denied having ever made a statement to an investigating officer that she had seen her son on the morning of the occurrence in question in the company of a man called "Peanut". Her denial of this statement was later rebutted by the testimony of the investigating officer, Detective Parker. The trial judge ruled that inasmuch as Batts had denied making the statement the state would not be permitted to adduce further testimony from Detective Parker that "Peanut" was the co-defendant King.

Gladys Basilio testified that on the morning of January 11, 1980 she was employed by the Department of Social Services located in Mondawmin Mall and that she had spoken with the appellant at her office between 9:00 — 9:30 a.m., a time within minutes of the robbery of Robert Shore. On cross-examination, testimony was adduced concerning Basilio's attitude toward police officers, her lack of cooperation with the police and the procedures employed in the course of her work. Thereafter, the state called three witnesses in rebuttal of her testimony. The substance and extent of their statements will be more fully discussed hereinafter.

I Dual Jury System

The appellant contends that the trial court erred in its refusal to grant a severance and in its use of the novel multiple jury system to determine the guilt of the respective defendants. More specifically, the appellant contends that the dual trial resulted in confusion and conflict, thus prejudicing his right to obtain a fair trial.

The multiple jury system is a unique concept in the province of jury trials. The procedure is precarious because all the risks inherent in the traditional jury system become two-fold; as a result, courts which have sanctioned its use have done so hesitantly.

In *State v. Corsi,* 86 N.J. 172, 430 A.2d 210 (1981), the Supreme Court of New Jersey affirmed the conviction of two criminal defendants who were tried jointly before separate juries. In rendering this decision the court expressed its reservations with respect to the frequent use of this procedure, stating:

> "The reason for the lack of widespread adoption of this technique would appear to be the belief that application of appropriate safeguards necessary to protect the rights of defendants in such a trial would be more time consuming than if separate trials were ordered. In addition, inherent in such a complicated procedure is the greatly enhanced possibility of error. It seems clear, therefore, that such procedure remains the rare exception rather than the rule.
>
> "We conclude that the multiple jury procedure utilized in the instant case can involve substantial risks of prejudice to a defendant's right to a fair trial. As the Appellate Division noted in *Hernandez, [State v. Hernandez,* 163 N.J. Super. 283, 394 A.2d 883 (App. Div. 1978), certif. den. 81 N.J. 342, 407 A.2d 1216 (1979)] there are too many opportunities for reversible error to take place. We do not recommend it. If it is to be used at all, it should be in relatively uncomplicated situations which will not require the excessive moving of juries in and out of the courtroom and where physical separation of the juries during the entire trial proceedings can be insured. In short, a trial court should carefully weigh the risks involved before attempting to utilize the multiple jury procedure." 430 A.2d at 213.

Other appellate courts, although finding no reversible error in the trial courts' use of this procedure, generally condemn its use. *See, United States v. Rimar,* 558 F.2d 1271 (6th Cir. 1977), *cert. denied,* 435 U.S. 922 (1978); *United States v. Sidman,* 470 F.2d 1158 (9th Cir. 1972), *cert. denied,* 409 U.S. 1127 (1973); *State v. Watson,* La., 397 So.2d 1337 (1981); *People v. Brooks,* 92 Mich. App. 393, 285 N.W.2d 307 (1979); Note, *Criminal Law — Multiple Jury Joint Trials — On the Joint Trial of Two Defendants, the Empanelling of Two Juries Simultaneously is Permissible,* 2 Fordham Urban L.J. 407 (1974).

In the present case the trial judge empaneled the juries separately and propounded preliminary instructions cautioning them not to speak of the trial among one another until it was concluded. Additionally, separate opening and closing arguments were given and there were separate jury deliberations and verdicts.[1]

The appellant contends that despite the various measures taken by the court, he nevertheless was deprived of a fair trial. He points to various incidents in the record which allegedly demonstrate prejudice. We fail to see the prejudice, particularly when it is considered that if the trial judge had denied the motion for severance and tried the defendants jointly before a single jury we would have found no abuse of discretion. Md. Rule 745 a provides as follows:

> "The court may order two or more charging documents to be tried together if the offenses and the defendants could have been joined in a single charging document."

Md. Rule 712 permits the charging of multiple defendants in a single document "if they are alleged to have participated

---

1. The courtroom was equipped with jury boxes on either side of the room as well as separate jury rooms behind each box. As the result of a faulty air conditioning system the juries were housed in the same jury room except during final deliberation. The appellant urges that he was prejudiced by this commingling of juries. In view of the specific instructions of the trial judge to the jurors not to speak among one another and the absence of any indication that this instruction was not observed, we find no reversible error.

in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." It is apparent to us the appellant and his co-defendant below were obviously engaged in a single transaction despite the state having dropped the charges which alleged each was involved in the robbery of both victims. *See, Stevenson v. State,* 43 Md. App. 120, 130-31, 403 A.2d 812 (1979), *aff'd. on other grounds,* 287 Md. 504, 413 A.2d 1340 (1980). Appellant had no vested right in shielding himself from the co-defendant's cross-examination of the victim Floyd. *See, Murray v. State,* 35 Md. App. 612, 615-16, 371 A.2d 719 (1977). We note particularly that there was no problem of a confession by a non-testifying defendant as arose in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

Although we have found no reversible error, we join the other courts in strongly condemning the use of dual juries.

## II Jury as the Judge of the Law

Relying on *Stevenson v. State,* 289 Md. 167, 423 A.2d 558 (1980), the appellant contends that the trial court committed reversible error in its instruction to the jury that they were the judges of the law, thereby leaving the jury free to interpret for itself numerous federal constitutional rights, i.e., burden of proof, presumption of innocence. Although appellant failed to raise an objection to the instructions at the time they were propounded, he contends that pursuant to Maryland Rule 757 (h) this Court should notice the alleged error. We decline to so exercise our discretion.

## III Court's Witness

The appellant contends that the trial court erred in calling Laura Batts, mother of the appellant, as a court's witness. The state indicated at the time of the request that it could not vouch for the veracity of the witness because she was the mother of the appellant and because her hostility had mani-

fested itself in her failure to appear in court after having received a subpoena. The state bolstered its argument by proffering to the court that upon speaking with the witness she had denied making the statement attributed to her by an investigating officer, namely, that on the morning of the incident she had observed her son together with "Peanut." The state additionally averred that the witness had refused to answer questions relating to her son. The trial court, satisfied with the relevancy of the proffered testimony and potential hostility of Batts as a witness, granted the request. She denied having ever told the police that she had seen her son with "Peanut" on the morning of the occurrence. The state thereupon placed the investigating officer on the stand to rebut this statement; but, as we stated above, the state was not permitted to elicit from the officer testimony that "Peanut" was co-defendant King.

The leading case in Maryland with respect to the propriety and use of the court's witness is *Patterson v. State,* 275 Md. 563, 342 A.2d 660 (1975). In *Patterson,* the Court of Appeals recognized that the decision as to whether to call an individual to the stand as a court's witness lies within the sound discretion of the court, and that such determination will not be reversed on appeal unless there is an abuse of that discretion. Among the various factors discussed by the Court to be considered by the trial judge in determining the necessity of calling a court's witness were (1) the prosecutor's inability to vouch for the veracity or integrity of the witness; (2) the close relationship between the witness and the defendant; (3) the existence of contradictory or inconsistent statements by the witness; (4) the hostility of the witness; and (5) the necessity for the testimony, i.e., where the witness possesses material evidence.

We see no abuse of discretion. It appears that the state established a sufficient basis for the court to view Laura Batts as a hostile witness in that (1) Batts was the mother of the appellant, and (2) she had made contradictory statements. In addition, her testimony was relevant and material.

## IV  Rebuttal Testimony

The appellant asserts that the witnesses offered by the state in rebuttal to the testimony of Gladys Basilio were improperly allowed to testify in that the purpose of their statements was to provide a personal attack on Basilio rather than to explain, contradict or reply to her testimony as required under the rules of rebuttal.[2] *See, Mays v. State,* 283 Md. 548, 391 A.2d 429 (1978); *State v. Hepple,* 279 Md. 265, 368 A.2d 445 (1977); *Smith v. State,* 273 Md. 152, 328 A.2d 274 (1974); *Lane v. State,* 226 Md. 81, 172 A.2d 400 (1961), *cert. denied,* 368 U.S. 993 (1962); *Riffey v. Tonder,* 36 Md. App. 633, 375 A.2d 1138, *cert. denied,* 281 Md. 745 (1977); *Felder v. State,* 6 Md. App. 212, 250 A.2d 666, *cert. denied,* 255 Md. 741 (1969).

Basilio testified that in her capacity as an eligibility worker for the Department of Social Services at the Mondawmin Mall, she met appellant in her office on January 11, 1980 between 9:00 — 9:25 a.m., a time within minutes of the robbery of Robert Shore. On cross-examination she stated that on July 23, 1980 Officer Gammerman had interviewed her. She denied telling Gammerman that she did not want anyone to go to jail or that she hated the police. Upon questioning as to the procedure for interviewing clients at the Department of Social Services, she stated that there was no set standard and that if she observed an individual in the waiting room she would assist them with no additional formality.

Officer Gammerman testified on rebuttal that Basilio had stated to him that she did not want to give the police information that would send someone to jail, that she read the newspapers and had personally observed what police do to people, and that she hated police officers. The second rebuttal witness, Joseph James, District Manager for the Department of Social Services, was called to rebut the testimony of Basilio with respect to whether or not a record

---

**2.** We note that the trial judge not only found the evidence to be proper rebuttal, but also said if it were not, he would permit the state to reopen the case.

would be kept of an individual who had visited the Department of Social Services three or four times during a period of two months. James responded that he was not able to answer that question because he was not the District Manager of the center at that time. He further stated that he had personally checked the files and that there was no open file on the appellant.[3] Finally, Alice Brown was placed on the witness stand to rebut Basilio's statement that there was no set procedure for interviewing clients. Brown, an employee of the Department of Social Services, contradicted Basilio by averring that the standard procedure for clients walking in the office entailed signing in with the receptionist and being instructed to wait in the "AR" room until a department employee could see him or her.

The general rule with respect to the admissibility of rebuttal testimony has been discussed by the Court of Appeals in *Lane v. State,* 226 Md. at 90, where the Court stated:

> "Any competent evidence which explains, or is a direct reply to, or a contradiction of, material evidence introduced by the accused may be produced by the prosecution in rebuttal, *Shanks v. State,* 185 Md. 437, 45 A.2d 85 [(1945)]. And what constitutes rebuttal testimony in a criminal prosecution is a matter resting in the sound discretion of the trial court."

We find no abuse of discretion in permitting the testimony of these witnesses. Appellant's defense of alibi was predicated upon the statements of Gladys Basilio. The obvious purpose of the introduction of the rebuttal testimony was to discredit the witness and demonstrate the presence of bias. Each of the witnesses sufficiently "explained, replied

---

3. At the hearing for a motion for new trial Joseph James testified that he had erred when he testified that the Department maintained no file on the appellant Scarborough. The records did, in fact reveal a file dated August 1979 which had been renewed for a period of three months in November 1979. The file did not reflect whether the appellant had visited the Department anytime in January 1980 and thus such error did little to improve appellant's position with respect to his alibi defense.

to, or contradicted" Basilio's statements. The testimony of Officer Gammerman revealed the potential bias or prejudice of Basilio with respect to her alleged meeting with the appellant at the time of the occurrence in question. Joseph James was presented to reveal the absence of a record of appellant's appearance at the Department on the date in question, and finally, Alice Brown was placed on the stand to testify as to the existence of standard procedures which Basilio had indicated did not exist. The determination of proper rebuttal evidence is a matter resting within the discretion of the trial court and as such will not be reversed on appeal in the absence of a demonstration that such testimony is manifestly wrong and substantially injurious. *Hepple v. State,* 31 Md. App. 525, 358 A.2d 283, *aff'd.* 279 Md. 265, 368 A.2d 445 (1977). We find no reversible error.

*Judgments affirmed.*
*Costs to be paid by appellant.*