583 A.2d 715

**Kelly SPENCE**

v.

**STATE of Maryland.**

**No. 109, Sept. Term, 1988.**

Court of Appeals of Maryland.

Jan. 8, 1991.

José Felipé Anderson, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for petitioner.

Ann N. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE,** RODOWSKY, McAULIFFE, ADKINS * and BLACKWELL,* JJ.

COLE, Judge.

Petitioner, Kelly Spence, was convicted in the Circuit Court for Baltimore City of robbery with a deadly weapon and common law burglary for an incident that occurred on January 30, 1986. On that date, some young men broke a basement window and entered the home of Lucille Rowe. Rowe testified that three young males attacked her in her home, locked her in a closet, ransacked her house, and stole jewelry, cash and her automobile. She was unable to identify any of her attackers.

Brian White, a friend of Spence's, testified at trial that on January 31, 1986, Spence came to his home and left Ms. Rowe's automobile. Spence was also attempting to sell some items of jewelry. White admitted that he also operated the vehicle.

One of the alleged accomplices, Vincent Cole, had pled guilty on April 30, 1987, to the same crimes perpetrated against Rowe and was sentenced to ten years, to be served consecutively to a life sentence he was then serving. The plea was accepted and the sentence imposed by the same judge who presided over Spence's jury trial that began on May 19, 1987. Cole was called to testify as a State's witness at Spence's trial. At that point in the proceedings, Spence's counsel, at a bench conference, voiced his concern

---

** Cole, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

* Adkins, J., and Blackwell, J., now retired, participated in the hearing and conference of this case while active members of this Court; but did not participate in the decision and adoption of this opinion.

that Cole's attorney was not present and that Cole had not yet been apprised of his fifth amendment rights. The prosecutor's response was, "He pled guilty, he faces—there is no self-incrimination. He is in no jeopardy forever."

During the bench conference with Cole, the judge, and both attorneys, Cole made it clear that he did not want to testify, that he wished to consult with his attorney, and that his testimony would be exculpatory as to Spence since he would testify that Spence was not with him when the crime was committed. The prosecutor indicated Cole would testify that Spence was not involved, but that his purpose for calling Cole was to get before the jury prior out-of-court statements Cole had made to police officers that, in fact, Spence was one of the perpetrators of the burglary and robbery of Mrs. Rowe. He also indicated that Cole may deny telling the police that Spence was involved. The Assistant State's Attorney represented that "there has been this tremendous change and he's decided to take every tack he can, including fabricating, fabricating testimony as to what happened during the confession...." The State then requested that the court call Cole as a court's witness since Cole was going to state that Spence was not with him when the crime was committed, and the prosecutor wanted to impeach that testimony.[1]

When the court noted a possible perjury prosecution if Cole now testified that Spence was not involved, the prosecutor pointed out that Cole's prior inconsistent statements about Spence's involvement were not under oath, so the State could not charge Cole with perjury. Over defense

---

1. At the time of the trial, the so-called Voucher Rule was in effect; that rule stated that one calling a witness must vouch for the witness' credibility. Only if a party could not vouch for the witness and the witness appeared to possess material evidence could the court use its discretion and call him as a court's witness. *Patterson v. State,* 275 Md. 563, 342 A.2d 660 (1975). The Voucher Rule was eliminated in 1989 by Maryland Rule 1–501 which provides that the credibility of a witness may be attacked by any party. Thus, the need for calling one as a court's witness has been greatly reduced, if not eliminated. *See, Beghtol v. Michael,* 80 Md.App. 387, 397, n. 3, 564 A.2d 82 (1989).

counsel's objection, the court called Cole as a court's witness and ordered, under threat of contempt, that Cole testify. Cole's entire direct examination by the court was as follows:

"BY THE COURT:

Q Mr. Cole, did there come a time—First of all, do you know the Defendant here on trial?

A Yes, I do.

Q Did there come a time on January 30th, 1986, at 9:30 that you had occasion to be at 419 North Rock Glen Road?

A Me Myself?

Q Yes.

A Yes.

Q Would you tell the ladies and gentlemen of the jury who you were there with?

A Arthur Johnson.

Q Were you there with anyone else?

A No. I wasn't.

Q All right. Counsel."

The Assistant State's Attorney repeatedly cross-examined Cole about statements he gave to various police officers. Cole admitted confessing to police officers, but denied that he told police that Spence was one of the perpetrators. He testified that the officers had asked him if he knew Kelly Spence, and he told them that he was acquainted with Spence, but did not tell police that Spence was one of his accomplices. Over objection, the prosecutor also questioned Cole by reading from Detective Naylor's typed notes of an oral statement allegedly given by Cole in which Cole acknowledged committing the crime with his brother, Johnson, and Spence. Cole contended that Naylor's notes were inaccurate, and he denied that he told Naylor that his brother or Spence were involved.

The State's next witness, predictably, was Detective Naylor. Naylor was permitted to testify, over objection, to the conversations he had with Cole, wherein Cole acknowledged

committing the burglary and robbery of Mrs. Rowe and told Naylor that the other participants in the crime were his brother Jeffrey Cole, Tony Johnson, and Kelly Spence.

Spence appealed his convictions to the Court of Special Appeals. In an unreported opinion affirming the convictions, the intermediate appellate court held that Cole's extrajudicial statements, including the incriminatory statements concerning Spence, were properly received into evidence for the purpose of impeaching Cole.

It is obvious that the prosecutor's sole reason for prevailing on the court to call Cole as a court's witness was to get before the jury Cole's extrajudicial hearsay statement implicating Spence. The prosecutor knew that Cole's testimony would be exculpatory as to Spence. The inescapable conclusion is that the State, over objection, prevailed on the court to call a witness who would contribute nothing to the State's case, for the sole purpose of "impeaching" the witness with otherwise inadmissible hearsay.

The State concedes, as it must, that Detective Naylor's testimony about Cole's statements regarding Spence's participation did not fall within the hearsay exception and was inadmissible as substantive evidence against Spence. It argues, however, that Cole's extrajudicial statements, though not admissible as substantive evidence, were admissible to impeach Cole. This blatant attempt to circumvent the hearsay rule and parade inadmissible evidence before the jury is not permissible. The State cannot, over objection, have a witness called who it knows will contribute nothing to its case, as a subterfuge to admit, as impeaching evidence, otherwise inadmissible hearsay evidence.

The sole value to the State from Cole's testimony was that it opened the door for the "impeaching" testimony of Cole's prior inconsistent statement. The statement was one which the State knew Cole would not acknowledge making. The obvious purpose of calling Cole was not because Cole would contribute anything to the State's case, but because Cole's testimony would enable the State to place Cole's

prior statement before the jury and to call Detective Naylor to "impeach" Cole. The improper prejudicial effect is obvious. We must conclude that Cole's statement and Naylor's testimony about Cole's hearsay statement implicating Spence was not offered because the State needed to impeach a witness it insisted be called—the hearsay was really being offered as evidence of Spence's guilt.

The instant case is very similar to the leading case of *United States v. Morlang*, 531 F.2d 183 (4th Cir.1975), where the defendant was convicted of conspiracy to bribe. At trial, the government had called as its first witness an alleged co-conspirator who had previously pled guilty. The witness, as the government knew he would, testified that the defendant had not participated in the conspiracy. The witness also denied having a conversation with a fellow prisoner in which he implicated the defendant. The government then called the fellow prisoner who testified to a statement made by the first witness implicating the defendant. The trial court permitted this testimony for the purpose of attacking the credibility of the first witness. The United States Court of Appeals for the Fourth Circuit held that the trial judge had erred in admitting the out-of-court statement. It was obvious to the court in *Morlang*, as it is obvious to this Court in the instant case, that the prosecutor called the witness "having in mind no other apparent purpose than to elicit from him testimony which may thereafter be impeached." *Id.* at 187. *Morlang* is also similar to the instant case, because Rule 607 (identical to Maryland Rule 1–501), which allows impeaching one's own witness, was adopted after the trial date but before the appeal; however, the court noted that, even if the rule was in effect, impeaching one's own witness "does not go so far as to permit the use of the rule as a subterfuge to get to the jury evidence otherwise inadmissible." *Id.* at 190.

In *United States v. Webster*, 734 F.2d 1191 (7th Cir.1984), the court noted that the *Morlang* rule that " 'impeachment by prior inconsistent statement may not be permitted where employed as a mere subterfuge to get before the jury

**532**

evidence not otherwise admissible,' [*Morlang,* 531 F.2d at 190] ... has been accepted in all circuits that have considered the issue. See, e.g. *United States v. Miller,* 664 F.2d 94, 97 (5th Cir.1981); *United States v. DeLillo,* 620 F.2d 939, 946 (2d Cir.1980); *Whitehurst v. Wright,* 592 F.2d 834, 839–40 (5th Cir.1979); *United States v. Rogers,* 549 F.2d 490, 497 (8th Cir.1976)." *Webster,* 734 F.2d at 1192. *See also Austin v. State,* 461 So.2d 1380 (Fla.App.1984); *Harrison v. State,* 534 So.2d 175, 178–79 (Miss.1988); *State v. Rufener,* 401 N.W.2d 740 (S.D.1987).

We need not reach any of the other issues raised by Spence since for the reasons already indicated we must reverse Spence's conviction and remand the case to the Circuit Court for Baltimore City for a new trial.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND TO REMAND TO THAT COURT FOR A NEW TRIAL. MAYOR AND CITY COUNCIL OF BALTIMORE TO PAY THE COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.