598 A.2d 1214

**Sean Lamont WRIGHT**

v.

**STATE of Maryland.**

**No. 202, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Dec. 6, 1991.

José Felipé Anderson, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

M. Jennifer Landis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Argued before ALPERT, BLOOM and WENNER, JJ.

WENNER, Judge.

Appellant, Sean Lamont Wright, was charged with first degree murder, second degree murder, use of a handgun in the commission of a crime of violence and related offenses. He was convicted by a jury in the Circuit Court for Baltimore City. The court sentenced appellant to 30 years of imprisonment for the second degree murder conviction and to a concurrent sentence of 10 years of imprisonment for use of a handgun in the commission of a crime of violence. The conviction for possession of a handgun was merged. Upon appeal, appellant asks us whether:

I.  The trial court erred in admitting Day's prior statements or failing to provide a jury instruction stating how the statement should be used by the jury.

II.  The trial court erred in admitting evidence that appellant had a gun in his possession in the past.

III.  The trial court erred in admitting evidence about alleged threats against potential witnesses.

IV.  The trial court erred in admitting the testimony of Detective Goldstein regarding the alleged fears of James Winston Day.

V.  The trial court erred in limiting appellant's cross-examination of Timothy Ferguson.

For reasons hereinafter explained, we shall reverse the judgments of the circuit court.

## BACKGROUND

Robert McDaniel was murdered in Baltimore City on December 8, 1989.  McDaniel died of a gunshot wound to the head.  Appellant[1] was charged with McDaniel's murder.  James Winston Day told a policeman and testified before the grand jury that, after hearing gunshots, he saw appellant putting a gun in his pocket and running with another man from the scene of the shooting.  Later, Day said he did not see appellant with a gun and wanted to correct his statement.  According to Day, the police told him that he would be charged with perjury if he changed his story.  The police denied any misconduct or coercion.  Prior to trial, Day made an affidavit that he had not seen appellant with a gun on the night of the shooting.

As Day persisted in denying that he had observed appellant with a gun on the night of the shooting, the State prevailed on the court to call Day as a court's witness.  In testifying as a court's witness, Day denied having seen appellant with a gun.  There was conflicting evidence concerning whether Day had changed his testimony because of alleged threats by appellant.  Day's father testified that his son had made his original statement because the police had threatened him.

Timothy Ferguson was presented as a witness for the State.  Ferguson said that appellant had confessed to McDaniel's murder while Ferguson and appellant were in

---

1.  The transcripts indicate that Sean Lamont Wright also went by the nickname, "Spanky."

the Baltimore City Jail. Appellant countered with the testimony of inmate Larry Williams. According to Williams, Ferguson told him that he would claim that appellant confessed to McDaniel's murder in order to avoid going to the penitentiary and to reduce Ferguson's sentence.

Before testifying at trial, James Winston Day had given a statement to the police and testified before the grand jury. In both, Day mentioned that he had seen appellant putting a gun in his pocket as appellant was running from the scene of the shooting. Subsequently, as we have said, according to Day, he was coerced into making those statements and indicated he would not testify at trial that he saw appellant with a gun after the shooting. Appellant contends that Day's statement to the police and his testimony before the grand jury should not have been admitted, or in the alternative, as they were admitted, a limiting instruction should have been given to the jury. As we have also said, at trial Day testified as a court's witness.

In *Scarborough v. State,* 50 Md.App. 276, 282, 437 A.2d 672 (1981), *cert. denied,* 292 Md. 639 (1982), we outlined five factors to be considered in determining when it is appropriate for the prosecution to have a witness called as a court's witness:

(1) the prosecutor's inability to vouch for the veracity or integrity of the witness;

(2) the close relationship between the witness and the defendant;

(3) the existence of contradictory or inconsistent statements by the witness;

(4) the hostility of the witness; and

(5) the necessity for the testimony, i.e., where the witness possesses material evidence.

When a trial court calls an individual as a court's witness, the court's decision to do so will not be overturned absent an abuse of discretion. *Scarborough,* 50 Md.App. at

276, 437 A.2d 672 (citing *Patterson v. State*, 275 Md. 563, 342 A.2d 660 (1975)). Nevertheless, even if a witness fits into the factors we mentioned in *Scarborough*, for the court to call that witness as a court's witness where, as here, the State *knows* the witness will deny making the previous statements is an abuse of discretion. In such a situation, the use of a witness as a court's witness is simply opening the door for impeaching the witness with prior inconsistent statements. *See, Spence v. State*, 321 Md. 526, 583 A.2d 715 (1991).

As we see it, *Spence* is dispositive of the instant case.[2] In *Spence*, Vincent Cole, one of Spence's alleged accomplices, was called to testify against Spence. During a bench conference, Cole told the judge and counsel that he did not want to testify and that his testimony "would be exculpatory as to Spence since he would testify that Spence was not with him when the crime was committed." *Spence*, 321 Md. at 528, 583 A.2d 715. Despite this, the State wanted to call Cole so that it could enter prior out-of-court statements made by Cole to police officers, implicating Spence in the burglary and robbery. In order to do so, the State prevailed upon the trial judge to call Cole as a court's witness.

While examining Cole, the State questioned Cole about statements given by him to the police. The State also questioned Cole "by reading [the police officer's] typed notes of an oral statement allegedly given by Cole in which

---

2. When the State attempts to distinguish *Spence*, it misses the mark. The State argues that *Spence* does not apply because Day was an "important state witness who observed Wright on the night of the shooting running from the area where the crime occurred." The importance of Day's testimony was whether he saw appellant with a gun immediately after the shooting. It was also for showing that, because of threats, Day denied having seen appellant with a gun after the shooting. Even without Day's testimony, the State was able to place appellant in the area of the shooting. The State knew Day was now going to testify that he did not see appellant with a gun on the night of the shooting, despite Day's statement to the police and his testimony to the grand jury. The main purpose for calling Day as a court's witness was so there would be an opportunity to impeach him with his previous statements, which were not otherwise admissible.

Cole admitted committing the crime with ... Spence."
*Spence*, 321 Md. at 529, 583 A.2d 715. Cole continued to
deny that Spence was involved.

In reversing Spence's conviction, the Court of Appeals
held that "[t]he inescapable conclusion is that the State,
over objection, prevailed on the court to call a witness who
would contribute nothing to the State's case, for the sole
purpose of impeaching the witness with otherwise inadmis-
sible hearsay." The State had argued that even if this
evidence was not generally admissible, it should be allowed
as impeachment evidence. The State's argument was re-
jected by the Court: "[t]he State cannot, over objection,
have a witness called who it knows will contribute nothing
to its case, as a subterfuge to admit, as impeaching evi-
dence, otherwise inadmissible hearsay evidence." *Spence*,
321 Md. at 530, 583 A.2d 715. The Court noted that the
statement "implicating Spence was not offered because the
State needed to impeach a witness it insisted be called—the
hearsay was really being offered as evidence of Spence's
guilt." *Spence*, 321 Md. at 531, 583 A.2d 715.

In the case *sub judice*, after Day was called as a
court's witness, on examination the State asked him about
the statement he had given to the police, and his testimony
before the grand jury. The State argues that these state-
ments were admissible as prior, inconsistent statements of
identification of appellant that it could use to impeach Day.
In support of its argument, the State relies on *Joiner v.
State*, 82 Md.App. 282, 571 A.2d 844 (1990). Its reliance on
*Joiner* is misplaced. In *Joiner*, a witness was called by the
State, not by the court. The State was permitted to im-
peach the witness with an extrajudicial identification of the
defendant. In the case *sub judice*, as in *Spence*, where the
disputed testimony was whether the defendant was involved
in the crime or not, Day was not denying that he had
identified appellant, he was denying that he had seen appel-
lant with a gun after the shooting. Hence, we are not faced
here with an extrajudicial identification. Instead, we are
faced with an attempt, by calling Day as a court's witness,

to admit an inconsistent hearsay statement as substantive evidence of appellant's guilt.

In so doing, the State was setting Day up as a proverbial straw man, so that on examination the State could knock Day down with hearsay statements previously made by him. As we pointed out earlier, one of the reasons a witness is called as a court's witness is that the party calling the witness is not sure of the testimony of the witness. Here, the State knew exactly what Day's testimony would be. Prior to trial, Day had repeatedly told the State he would testify that he did not change his testimony because of threats, and that he did not see appellant running with a gun from the scene of the shooting. The Court of Appeals did not accept this "subterfuge" in *Spence,* and we will not accept it here. The prejudicial effect of Day's testimony was that it was "really being offered as evidence of [appellant's] guilt," not to impeach a witness the State insisted upon being called as a court's witness. *Spence,* 321 Md. at 531, 583 A.2d 715. As the "Voucher Rule" was eliminated in 1989, there was no reason for the State not to call Day and then impeach him with his prior inconsistent statements, or, as in *Joiner,*[3] have Day classified as a surprise witness. Thus, the admission of Day's prior testimony by using Day as a court's witness was an abuse of discretion. Consequently, we shall reverse the judgments of the circuit court.

■ As the State sees it, even if it was error to admit Day's statement to the police, it was harmless because appellant did not object when Day's testimony before the grand jury was introduced. We do not agree. Appellant continuously objected to presenting Day as a court's witness, thus preserving the issue for appeal. Under the

---

3. In *Beghtol v. State,* 80 Md.App. 387, 397, n. 3, 564 A.2d 82 (1989), we noted that the Voucher Rule recently "was eliminated by Rule 1–501 (effective January 1, 1989), which provides that the credibility of a witness may be attacked by any party. Thus, the need for court's witnesses *no longer exists.*" (Emphasis added).

circumstances, the question is whether Day should have been called as a court's witness. The answer is "no." As we shall reverse the judgments of the circuit court, we see no need to address the remaining issues raised by appellant.

JUDGMENTS REVERSED.

COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.