707 A.2d 941

**Reginald PICKETT**

v.

**STATE of Maryland.**

**No. 1134, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

April 3, 1998.

598

Claudia A. Cortese, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Thomas K. Clancy, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, and Jack B. Johnson, State's Attorney for Prince George's County, Upper Marlboro, on the brief), for appellee.

Submitted before DAVIS and SONNER, JJ., and JAMES S. GETTY, Judge, (retired), Specially Assigned.

SONNER, Judge.

On May 29, 1997, a jury in the Circuit Court for Prince George's County found appellant, Reginald Pickett, guilty of attempted second degree murder, robbery with a dangerous weapon, robbery, reckless endangerment, and assault and battery. On July 25, 1997, the court sentenced Pickett to thirty years incarceration for attempted second degree murder, and merged the remaining convictions. The court suspended all but twenty years of the sentence and also mandated, pursuant to Maryland Code, Art. 27, § 643B, that the first ten years be served without the possibility of parole. Pickett noted an appeal and raises the following issue:

> Did the trial court err in allowing the State to "impeach" its own witness with otherwise inadmissible testimony that appellant admitted to stabbing and robbing a man in a McDonald's parking lot in June of 1996?

We find that the trial court erred in admitting the impeachment evidence and, because the court's error was not harmless beyond a reasonable doubt, we reverse Pickett's convictions.

### *Facts*

On the afternoon of June 11, 1996, while walking from his Southview apartment to a local shopping center, Donnell Hester was attacked, in an apparent robbery attempt, by a group of teenagers and an older man, their "leader," whom Hester identified as appellant, Reginald Pickett. Hester testi-

fied that appellant stabbed him once before Hester managed to flee to a nearby McDonald's.

Hester used the pay phone at the McDonald's and called 911. As he was waiting for the police to arrive, Hester once again saw appellant in the parking lot. Appellant approached him, took a swing at him, but missed. Hester then saw other members of the group come toward him. He attempted unsuccessfully to flee, but stated that "it seemed like I was grabbed from a whole bunch of different sides." Hester was then beaten, stabbed repeatedly, and robbed. He testified that he recalled seeing his stolen wallet in appellant's possession after the beating. Hester later selected appellant's photograph out of a six-photo array shown to him by police, and identified appellant as the "leader" in the June 11th assault.

At trial, the State called to the stand appellant's sister, Wilhelmina Pickett. She testified that her brother lived with her for three or four weeks in June of 1996. She also acknowledged that her brother frequently associated with a group of teenagers. The Assistant State's Attorney then engaged Ms. Pickett in the following colloquy:

[Assistant State's Attorney]: Okay. And there came a time ... when you talked to [your brother] and he made some admissions with respect to this incident to you?

[Ms. Pickett]: He never. I told you that. He never made none to me.

\* \* \* \*

[Assistant State's Attorney]: Isn't it a fact that he told you that he stabbed a person multiple times in a—

[Ms. Pickett]: No, he did not.

[Assistant State's Attorney]: Your answer is no?

[Ms. Pickett]: No.

[Assistant State's Attorney]: Isn't it a fact that you called Crime Solvers?

[Ms. Pickett]: Yes.

[Assistant State's Attorney]: And you reported that your brother was involved, didn't you?

[Ms. Pickett]: Yes, I did.

\* \* \* \*

[Assistant State's Attorney]: Just so the record is clear, ma'am, you're testifying under oath that Mr. Reginald Pickett never told you that he stabbed a person multiple times in a McDonald's parking lot?

[Ms. Pickett]: Reginald Pickett ain't the one that told me.

Defense counsel did not cross-examine Ms. Pickett.

The State then called Prince George's County Police Detective William Chinn. When the Assistant State's Attorney began questioning Detective Chinn regarding conversations he had with Ms. Pickett, defense counsel objected on the grounds that the State was eliciting inadmissible "double hearsay" or, alternatively, impermissible impeachment evidence. The Assistant State's Attorney, without claiming to be surprised by Ms. Pickett's testimony, argued simply that "the two statements ... directly contradicted each other ... I'm only introducing [Detective Chinn's] statement as inconsistent to what she said here today." Without addressing the impeachment argument, the trial court found that the proffered statement satisfied exceptions to the hearsay rule and, accordingly, allowed Detective Chinn to testify to what Ms. Pickett told him.

Well, I conclude that, in this case, that we really don't have a hearsay within hearsay situation, that is, Ms. Pickett's original statement of—she said to someone else that her brother said. The "her said" part of that could be a hearsay statement, but it is not hearsay, since she's a witness who's here, available to testify in court, so she's an available witness.

The second portion of it is hearsay, [but], within the exception, because it's a statement against interest by the declarant, the defendant in this case, so for those reasons, I'm going to allow the testimony.

Detective Chinn then testified, over appellant's repeated objections, that "Ms. Pickett advised [him] that [appellant] and another individual were bragging to her about robbing and stabbing an individual in the McDonald's parking lot earlier in the month of June."

## *Analysis*

### I.

The only issue in this appeal is whether the trial court erred in allowing Detective Chinn to testify that appellant confessed to his sister his involvement in the stabbing incident. Appellant argues that Chinn's testimony constituted impermissible impeachment evidence. We agree.

The Maryland Rules of Evidence provide that the credibility of a witness may be attacked by any party, including the party calling the witness. Maryland Rule 5–607. One method of attacking the credibility of, or impeaching, a witness is to show that the witness has previously made a statement inconsistent with present testimony. Md. Rule 5–616(a)(1). Even if that prior inconsistent statement would otherwise be inadmissible as hearsay, it may be admissible for the limited purpose of impeaching the witness. At a criminal trial, however, there are limits on the State's power to impeach its own witness by presenting prior inconsistent statements. See *United States v. Ince,* 21 F.3d 576, 579 (4th Cir.1994).

In *Spence v. State,* 321 Md. 526, 583 A.2d 715 (1991) and, again, in *Bradley v. State,* 333 Md. 593, 636 A.2d 999 (1994), the Court of Appeals reversed convictions because the trial court erroneously permitted the State to impeach its own witness and, in so doing, allowed the State to "circumvent the hearsay rule and parade inadmissible evidence before the jury ..." *Spence,* 321 Md. at 530, 583 A.2d 715. In *Spence,* the State called to the stand Vincent Cole, Spence's alleged accomplice, who had pleaded guilty to the robbery charge on which Spence was being tried. During a bench conference, prior to any questioning of Cole, the prosecutor indicated that Cole

would testify that Spence was not involved in the robbery, but that his purpose for calling Cole was to get before the jury prior out-of-court statements Cole had made to police officers that inculpated Spence. The prosecutor then requested that the court call Cole as a court's witness. Over defense counsel's objection, the court called Cole and questioned him regarding Spence's involvement. Cole denied that Spence was involved in the crime. Predictably, the State's next witness was the detective who interviewed Cole, who was permitted to testify, again over objection, that Cole made an earlier statement to him acknowledging Spence's involvement.

The Court of Appeals reversed Spence's conviction, holding that "[t]he State cannot, over objection, have a witness called who it knows will contribute nothing to its case, as a subterfuge to admit, as impeaching evidence, otherwise inadmissible hearsay." *Id.* at 530, 583 A.2d 715. "The sole value to the State from Cole's testimony was that it opened the door for the 'impeaching' testimony of Cole's prior inconsistent statement." *Id.*

In *Bradley*, the State again knew that its "turncoat" witness would deny making the very statements that the State wished to produce. Nevertheless, the trial court allowed the State to question the witness, elicit the expected denial, and then, over objection, "impeach" his testimony by calling a police officer to the stand to testify to the witness's prior, inconsistent, out-of-court statements. Adhering to the rationale of *Spence,* the Court of Appeals reversed, holding that "a defendant is denied a fair trial if the State, with full knowledge that its questions will contribute nothing to its case, questions a witness concerning an independent area of inquiry in order to open the door for impeachment and introduce a prior inconsistent statement." *Bradley,* 333 Md. at 604, 636 A.2d 999.

Unlike *Spence* and *Bradley,* in the case before us, there is no clear statement on the record that would allow us to conclude that the State **knew**, prior to calling Ms. Pickett, that she would deny her brother's involvement. Nor do we expect the trial judge to "crawl inside the prosecutor's head to

divine his or her true motivation" in calling a witness.[1] *Ince,* 21 F.3d at 580 (4th Cir.1994). Nevertheless, in determining whether a witness's testimony offered as impeachment is admissible, or, on the contrary, is a "mere subterfuge" to get before the jury otherwise inadmissible hearsay, the trial court is required, as is the case with any evidence, to weigh the testimony's probative value against its tendency to prejudice the defendant unfairly or to confuse the jury. *Id.* (citations omitted); Md. Rule 5–403;[2] *see also United States v. Webster,* 734 F.2d 1191, 1193 (7th Cir.1984) (defendant may "argue that the probative value of the evidence offered to impeach the witness is clearly outweighed by the prejudicial impact it might have on the jury because the jury would have difficulty confining the use of the evidence to impeachment"). In these circumstances, the testimony's probative value is defined as its value for impeachment purposes, that is, its likelihood of actually damaging the witness's credibility. *Ince,* at 580–81.

▇▇▇ The prejudicial impact of Detective Chinn's testimony is self-evident. His statement—that appellant bragged to his sister about robbing and stabbing someone in the Mc-Donald's parking lot—not only serves as a detailed admission of the crimes charged, but also portrays appellant as a ruthless and remorseless thug. As the Fourth Circuit noted in *Ince,* "[i]t is hard to imagine any piece of evidence that could have ... a greater prejudicial impact than such a supposed naked confession of guilt." *Id.* at 581. Furthermore, the jury was permitted to hear this bald confession from the mouth of

---

1. We need not decide whether, as a prerequisite to impeachment, the State must demonstrate surprise. We note, however, on the record before us, that the State never indicated that it expected Ms. Pickett to testify that her brother bragged to her about committing the crime. In his opening statement, the prosecutor did not mention Ms. Pickett or her anticipated testimony. More important, Ms. Pickett's testimony itself, "I told you that ... He never made [any admissions] to me," and "Reginald Pickett ain't the one that told me," demonstrates that it is more likely than not that the State was not surprised.

2. Md. Rule 5–403 allows the trial judge to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ..."

a police detective, whom the jury is likely to find trustworthy. See *United States v. Robinson,* 475 F.2d 376, 380–81 (D.C.Cir. 1973) (discussing "problem that jurors tend to attach disproportionate weight to the testimony of police officers"). Finally, Detective Chinn was recounting appellant's alleged confession through a third person; as such, it was "hearsay of the worst variety, incapable of being countered by direct evidence." *United States v. Crouch,* 731 F.2d 621, 624 (9th Cir.1984); see also *United States v. Morlang,* 531 F.2d 183, 190 (4th Cir.1975) (citing *Bridges v. Wixon,* 326 U.S. 135, 153–54, 65 S.Ct. 1443, 1452–53, 89 L.Ed. 2103 (1945)) ("foremost among [the notions of fairness upon which our system is based] is the principle that men should not be convicted on the basis of unsworn testimony").

Given the likely prejudicial impact of Chinn's testimony, the trial court should have excluded it, absent some extraordinary probative value. Again, because Chinn's testimony was admitted solely for purposes of impeachment, its probative value must be tested solely in terms of its effectiveness in impeaching Ms. Pickett's credibility. *See Ince, supra,* at 580–81. Based on our review of the record, we conclude that Chinn's testimony did very little to impeach Ms. Pickett's credibility.

█ First, the State had no need to attack Ms. Pickett's credibility because her testimony did not affirmatively damage the State's case—she merely refused to give testimony that the State had hoped she would volunteer. *See Id.* at 581 (citing 27 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure: Evidence § 6093, at 515 (1990) ("If testimony does no damage, impeachment evidence has no probative value.")) [3]; and *Spence,* 321 Md. at 531, 583 A.2d 715 ("The improper prejudicial effect [of the State's purported impeachment evidence] is obvious." "[It] was not offered because the State needed to impeach a witness it insisted be

---

**3.** Maryland's impeachment rule, Md. Rule 5–607 (formerly Md. Rule 1–501) "is a verbatim adoption of Federal Rule of Evidence 607," *Baker v. State,* 332 Md. 542, 552 n. 2, 632 A.2d 783 (1993); *see also* Committee Note to Md. Rule 5–607.

called—the hearsay was really being offered as evidence of Spence's guilt.") Indeed, much of Ms. Pickett's testimony was valuable to the State. She helped corroborate Hester's description of his assailants (a group of teenagers and an older man) by acknowledging that her brother frequently associated with a group of juveniles. She also admitted calling Crime Solvers to report the crime, and even admitted reporting that her brother was one of the culprits. Given the totality of Ms. Pickett's testimony, we fail to see the justification in allowing the State to attack her credibility simply because she denied that her brother told her that he committed the crime. As we conclude that the probative value of Detective Chinn's testimony was clearly outweighed by its danger of unfair prejudice, we hold that the trial court erred, as a matter of law, in admitting it.

## II.

The State argues that any error resulting from the admission of Detective Chinn's "impeachment" evidence was harmless. We disagree. Under the "strict standard" adopted in *Dorsey v. State,* 276 Md. 638, 350 A.2d 665 (1976), we are unable to "declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict ..." *Graves v. State,* 334 Md. 30, 43, 637 A.2d 1197 (1994). The principle is well settled that when, as here, the erroneously admitted evidence is the defendant's confession, we shall "exercise extreme caution before determining that the [error] was harmless." *Bradley v. State,* 333 Md. at 608, 636 A.2d 999 (quoting *Arizona v. Fulminante,* 499 U.S. 279, 296, 111 S.Ct. 1246, 1258, 113 L.Ed.2d 302 (1991)). As Justice Kennedy stated in his concurring opinion in *Fulminante,* 499 U.S. at 313, 111 S.Ct. at 1266, "[i]f the jury believes that [the] defendant has admitted the crime, it doubtless will be tempted to rest its decision on that evidence alone, without careful consideration of the other evidence in the case."

The State's harmless error claim rests largely on its belief that the trial court was able to purge the evidentiary error through limiting instructions. After reviewing the court's

efforts to correct the error, however, we disagree. First, the court gave no limiting instruction immediately after Detective Chinn recounted appellant's alleged confession. As we discuss below, the court's failure to instruct at this juncture was fatal, for an unequivocal statement directing the jury to disregard Chinn's testimony altogether, at a minimum, would have been necessary in attempting to cure the error.

Second, when the court did finally instruct the jury at the close of evidence, that instruction did not, and, we believe, could not have rectified the error. Prior to jury instructions, the State requested instruction number 3:19 of the Maryland Criminal Pattern Jury Instructions. That instruction reads as follows:

### PRIOR STATEMENTS

You have heard testimony that [the witness] made a statement [before trial]. Testimony concerning that statement was permitted only to help you decide whether to believe the testimony that the witness gave during this trial.

It is for you to decide whether to believe the trial testimony of [the witness] in whole or in part, but you may not use the earlier statement for any purpose other than to assist you in making that decision.

Defense counsel objected to this jury instruction and, ultimately, the court did not give instruction 3:19 but, rather, instructed the jury generally on the credibility of witnesses:

In determining what testimony you will find to be true, credible, and believable, you may consider the following factors:

. . . whether and the extent to which the witness's testimony in court differed from the statements made by the witness on any previous occasion.

Defense counsel made no objection at the conclusion of jury instructions.

The State argues that appellant has "waived any claim of error" by "failing to object to the court's instructions, and . . .

by objecting to [pattern instruction 3:19]." We need not decide that issue, however, as we conclude that neither the instruction actually given, nor the instruction requested, would have remedied the earlier admission of improper testimony.[4] As we noted above, had the court directed the jury to disregard completely Detective Chinn's testimony, our harmless error determination may have been different. On the other hand, any instruction directing the jury to consider evidence for the "limited" purpose of assessing the witness's credibility, as instruction 3:19 does, is inadequate because, as we have concluded, Detective Chinn's testimony was improper, not only as substantive evidence, but also for its purported impeachment value. If, as we have held, the State had no business impeaching Ms. Pickett's credibility because her testimony did not damage the State's case, then an instruction requiring the jury to consider Detective Chinn's testimony as it bore on Ms. Pickett's credibility is inapposite. Since the court did not completely exclude the tainted evidence from the jury's consideration, we are unable to conclude, beyond a reasonable doubt, that "the erroneously admitted statement 'in no way influenced the [jury's] verdict.' " *Bradley*, 333 Md. at 608, 636 A.2d 999 (quoting *Dorsey*, 276 Md. at 659, 350 A.2d 665). Consequently, we reverse.

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR A NEW TRIAL.**

**PRINCE GEORGE'S COUNTY TO PAY COSTS.**

---

**4.** As the Court noted in *Bradley*, "[a]lthough 'the law frequently permits the jury to hear evidence admitted for a limited purpose, and presumes that the jury will comply with an appropriate instruction,' we are unwilling to apply that presumption in this case." *Bradley*, 333 Md. at 611, 636 A.2d 999 (quoting *McKnight v. State*, 280 Md. 604, 615, 375 A.2d 551 (1977)).