723 A.2d 912

Crawley McCoy FOREMAN

v.

STATE of Maryland.

No. 907, Sept. Term, 1998.

Court of Special Appeals of Maryland.

Feb. 4, 1999.

**30**

Martha Weisheit, Asst. Public Defender (Stephen E. Harris, Public Defender on the brief), Baltimore, for appellant.

Annabelle L. Lisic, Asst. Atty. General (J. Joseph Curran, Jr., Atty. General, Baltimore, and Jack B. Johnson, State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Submitted before MURPHY, C.J., and ADKINS and ROBERT C., MURPHY (Retired, Specially Assigned), JJ.

MURPHY, Chief Judge.

As a general rule, extrinsic evidence of a witness's prior oral inconsistent statement is admissible if (1) the contents of the statement and the circumstances under which it was made, including the persons to whom it was made, are disclosed to the witness, (2) the witness is given an opportunity to explain or deny it, and (3) the witness has failed to admit having made the statement. Md. Rule 5–613(a) and (b). In criminal cases, however, there is what has become known as the *Spence–Bradley* exception to this general rule:

[A] defendant is denied a fair trial if the State with full knowledge that its questions will contribute nothing to its case, questions a witness concerning an independent area of inquiry in order to open the door for impeachment and introduce a prior inconsistent [oral] statement.

*Bradley v. State,* 333 Md. 593, 604, 636 A.2d 999 (1994); *Spence v. State,* 321 Md. 526, 530, 583 A.2d 715 (1991); See also *Stewart v. State,* 342 Md. 230, 242–243, 674 A.2d 944 (1996). This appeal presents the question of whether there is

an "excited utterance" exception to the *Spence–Bradley* exception.

In the Circuit Court for Prince George's County, a jury (Hon. James J. Lombardi, presiding) convicted Crawley McCoy Foreman, appellant, of child abuse and second degree assault. Appellant concedes that the evidence was sufficient to establish that he committed those offenses against his 11 year old son. He contends, however, that he is entitled to a new trial because

I.  THE TRIAL JUDGE ERRED IN PERMITTING THE STATE TO IMPEACH ITS OWN WITNESS WITH PRIOR INCONSISTENT STATEMENTS THAT WERE OTHERWISE INADMISSIBLE AS HEARSAY.

II.  THE TRIAL JUDGE ERRED IN ADMITTING HEARSAY STATEMENTS OF THE VICTIM AS TO THE IDENTITY OF HIS ABUSER UNDER THE EXCEPTION TO THE HEARSAY RULE RELATING TO STATEMENTS MADE FOR MEDICAL DIAGNOSIS OR TREATMENT.

III.  THE TRIAL JUDGE ERRED IN REFUSING TO PERMIT THE DEFENSE TO INTRODUCE INTO EVIDENCE CERTAIN SCHOOL RECORDS OF THE VICTIM ON THE GROUNDS THAT THEY WERE HEARSAY.

For the reasons that follow, we shall affirm the judgment of the circuit court.

## I.

The State's first witness was Corporal Joseph Palmieri of the Prince George's County Police Department. The following transpired during his direct examination:

Q.  You may use your notes to refresh your memory.

A.  I was en route to work. I was working the midnight shift at that time. I heard a call go out over the air, over the radio for a domestic assault which was either

occurring at that time or just occurred at [the residence of appellant, his wife, and the victim].

\*     \*     \*

Q. What happened when you arrived?

A. Yes, sir. When I arrived on the scene the victim, a juvenile, approached me along with his mother. The mother being [appellant's wife].

Q. Can you describe what they looked like?

A. The female was very upset. It appeared that she had been crying, appeared very distraught. The juvenile ... had bruises and puffiness on his face.... I do recall a very large lump, very large, almost softball size on the back of his head.

Q. And what was his emotional state?

A. He was upset, very very upset.

\*     \*     \*

THE WITNESS: He said his father was upset at him and his father had kicked him several times in the face, head and rib area. I'm getting all this information from him. He said ... his father continued this attack by slapping him several times in the face and banging his head, the juvenile's head into the closet wall.

Q. And where was the mother as the [victim] was telling you all this?

A. She was standing right along side of him.

Corporal Palmieri was followed to the stand by Martha Mangino, a volunteer fire department emergency medical technician who had also responded to the call. According to EMT Mangino, when the victim entered the ambulance, he told the ambulance attendants "that his father had punched him in the face and kicked him in the chest."

The jurors then heard testimony from the victim and from his mother, appellant's wife. These witnesses had refused the prosecutor's request for an interview. On the stand, both were hostile to the State. According to them, on the occasion

at issue the victim (1) sustained his injuries when he was "beaten up" at school, and (2) was not injured by appellant, who merely "slapped" the victim after the victim's mother insisted that the victim be disciplined for continued misbehavior in school. After questioning these witnesses about what they said at the scene of the crime, the State then "recalled" Corporal Palmieri and EMT Mangino.

Corporal Palmieri testified that upon his arrival appellant's wife told him that the victim was "slapped" and "kicked" and "pushed into the wall" by appellant. EMT Mangino testified that appellant's wife told her that the victim had been "punched in the face" and "kicked ... in the chest" by appellant. According to appellant, evidence of what the victim and the victim's mother said at the scene of the crime was inadmissible under *Spence, supra,* and *Bradley, supra.* We disagree.

In both *Spence* and *Bradley,* the prosecutor knew before the witness took the stand that the witness would repudiate a prior statement or a critical portion of a prior statement. In each of those cases, the prosecutor's cross-examination about the alleged inconsistency was a mere subterfuge; the trial judge and all counsel knew in advance that the witness would deny having made the alleged prior oral statement. In each of those cases, cross-examination about the statement was motivated solely by the prosecutor's desire to lay the foundation required for the introduction of extrinsic impeachment evidence in the hope that the jurors would do more than disbelieve the witness's denial. The "impeachment" evidence was presented in the hope that the jurors would convert it into substantive evidence of the defendant's guilt.

In this case, the record shows that it was at the suggestion of appellant's trial counsel that the victim and the victim's mother refused the prosecutor's request for an interview. At no time prior to trial, however, did either of these witnesses "recant" their statements to Corporal Palmieri and EMT Mangino. In the absence of any recantation, the prosecutor was not foreclosed from attacking their credibility

through questions directed at proving under Md. Rule 5–613 that they had made statements that are inconsistent with their present testimony. Md. Rule 5–616(a)(1); *Pickett v. State,* 120 Md.App. 597, 604–605, 707 A.2d 941 (1998).

Under the unique circumstances of this case, Judge Lombardi neither erred nor abused his discretion when he permitted the State to recall Corporal Palmieri and EMT Mangino.[1] Each of the statements about which they testified described the startling event to which they had responded, and was made at a time when the declarant was under noticeable stress of excitement caused by the event.[2] The statements about which they testified were thus admissible as substantive evidence under Md. Rule 5–803(b)(2). The *Spence–Bradley* exception does not prohibit the State from impeaching a witness with his or her prior inconsistent *written* statement. *Stewart, supra,* 342 Md. at 242–243, 674 A.2d 944. It does not prohibit the State from impeaching a witness with his or her prior inconsistent statement given under oath to a grand jury. *Nance v. State,* 331 Md. 549, 571, 629 A.2d 633 (1993). It does not prohibit the State from impeaching a witness with a prior inconsistent statement of identification. *Thomas v. State,* 113 Md.App. 1, 6, 686 A.2d 676 (1996). We hold that the *Spence–Bradley* exception does not prohibit the State from (1) questioning a witness about an inconsistent statement allegedly made at the scene of the crime while the witness was observed to be suffering from the stress produced by the crime under investigation, and (2) offering extrinsic

---

1. During Corporal Palmieri's first appearance on the stand, appellant's trial counsel objected when the prosecutor asked, "what if anything was [the victim's mother] saying?" Judge Lombardi's decision to sustain the objection to this overbroad question was not inconsistent with his subsequent decision to receive Corporal Palmieri's answer to the following question: "Corporal Palmieri, I just want to ask you one very specific question. When you were at the scene ... did [the victim's mother] tell you what had happened?"

2. Moreover, this is not a case in which the accused denied having taken any aggressive action against the victim. The question was whether the victim's injuries preceded or resulted from the discipline imposed by appellant.

impeachment evidence that the witness made such a statement on that occasion.[3]

## II.

According to appellant, Judge Lombardi should have granted the "motion to strike" interposed by appellant's trial counsel after EMT Mangino testified about what the victim said to the ambulance attendants. The record shows that the following transpired during the technician's direct examination:

Q. Now, when you asked [the victim] those basic questions did he respond?

A. Yes, he did.

Q. What did he tell you?

A. He told us that he had—that his father had punched him in the face and kicked him in the chest.

[Defense Counsel]: Objection and motion to strike.

\* \* \*

THE COURT: I'm letting it in under the statement for purposes of any medical treatment that this woman might have been able to give. So I'll overrule your objection.

▮ Appellant now argues that Judge Lombardi should have excluded that portion of the victim's declaration that identified appellant as the perpetrator. This argument is based on the proposition that the identity of the person who caused the injury is not admissible under Md. Rule 8–803(b)(4) because that particular information is not "pathologically germane" (i.e., "relevant" or "of consequence") to the declarant's diagnosis and treatment.[4] We are persuaded, however, that

---

3. According to a majority of the United States Supreme Court, testimony about co-conspirators' out-of-court statements "provide evidence of the conspiracy's context that cannot be replicated, even if the declarant testifies to the same matters in court." *United States v. Inadi*, 475 U.S. 387, 395, 106 S.Ct. 1121, 1126, 89 L.Ed.2d 390 (1986). Testimony about excited utterances made at the scene of the crime provide evidence that cannot otherwise be replicated when, as in this case, the declarant's testimony is inconsistent with his or her excited utterance.

4. When effective treatment may require antibiotics, a tetanus shot, or the removal of the victim from the home, the identity of the assailant is

this argument was not presented to Judge Lombardi.

■ Although Judge Lombardi discussed the hearsay exception in Md. Rule 8–303(b)(4), he admitted the victim's statement as relevant to what action the EMT would take after hearing it. The rule against hearsay does not exclude out of court declarations offered to show the effect that such declarations had on the person who heard them. *Shunk v. Walker,* 87 Md.App. 389, 402, 589 A.2d 1303 (1991); *Sparks v. State,* 91 Md.App. 35, 94, 603 A.2d 1258 (1992). Appellant's trial counsel argued that everything the victim said to the EMT should be excluded because the EMT did not make a diagnosis or administer any medical treatment. Judge Lombardi was never requested to deliver a limiting instruction under Md. Rule 5–106, or to "strike" only that portion of the statement in which the victim identified his father as the person who had inflicted the injuries. Under these circumstances, the "identity of abuser" issue has not been preserved for our review.

### III.

■ During appellant's direct examination, he testified that his wife insisted that he discipline the victim when she "went off" after reading "a stack of stuff" received from the victim's school in that day's mail. When appellant's trial counsel attempted to introduce the "stack" into evidence, Judge Lombardi sustained the State's hearsay objection and added that the records were "unauthenticated . . . at this point." Appellant now argues that the records were admissible "business records" under Md. Rule 5–803(b)(6). We are persuaded that the exclusion of these documents was not erroneous. The documents were not eligible to be received into evidence until they had been authenticated either by a testifying "sponsor" or in conformity with Md. Rule 5–902(a).

---

relevant to the victim's diagnosis and treatment. *In re Rachel T.,* 77 Md.App. 20, 36, 549 A.2d 27 (1988).

It is true that a different "authentication" analysis is applicable to documents offered to show the effect upon the person who read them.[5] The documents at issue, however, were never offered for the limited purpose of showing their effect on appellant's wife—the person who allegedly read them, or on appellant—the person who allegedly imposed discipline as a result of what was contained in them. Under the circumstances, we agree with Judge Lombardi that the items offered into evidence were inadmissible for lack of required foundation.

**JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.**

---

**5.** The person who read the document—and who was allegedly affected as a result of having done so—is competent to authenticate that document when it is offered for the limited purpose of showing its effect on the reader.